James E. HIGGINS, personal representative for the estate of Barry F. Aires, Plaintiff–Appellant,

v.

PORT OF NEWPORT, a municipal corporation, Defendant–Appellee.

No. 96–35195.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 7, 1997.

Decided Aug. 1, 1997.

Douglas R. Holbrook, Litchfield & Carstens, Newport, OR, for plaintiff–appellant.

Peter R. Mersereau, Thomas W. McPherson, Mersereau & Shannon, Portland, OR, for defendant–appellee.

Before: GOODWIN, REINHARDT, and RYMER, Circuit Judges.

RYMER, Circuit Judge:

James E. Higgins, personal representative for the Estate of Barry F. Aires,[1] appeals the entry of summary judgment for the Port of Newport on Aires's claim under 42 U.S.C. § 1983 that the Port violated his due process rights by foreclosing on his boat through nonjudicial sale. Aires moored his boat at the Port's docks for two years without making any of the rental payments specified in the moorage agreement he signed. Pursuant to the terms of the agreement, the Port provided notice through certified mail to Aires's last known address, by posting notices on the boat, and by publishing notices in local newspapers, of the overdue debt and of its intent to seize and sell the vessel at public auction in the event of continued nonpayment. Aires concedes that he had actual notice that the Port intended to sell his boat, but never contested the amount due or pre-

sented objections to the Port Manager as he could have done. On these facts, we conclude that Aires received all the process that is constitutionally "due," and, as we have jurisdiction, 28 U.S.C. § 1291, we affirm.

I

Barry F. Aires co-owned with the estate of his deceased mother a commercial fishing vessel, the F/V KATY ANN, which he moored at docks owned by the Port of Newport, a chartered municipality, from January 1992 until October 1994 pursuant to a moorage license agreement executed with the Port of Newport on January 13, 1992. The agreement provides:

11. *PORT'S RIGHTS UPON NONPAYMENT OR ABANDONMENT.* In the event moorage charges or any other charges due to the Port become delinquent . . ., or if the vessel is deemed abandoned, the Port may, at its option, secure and take possession of the boat or other personal property so that the same cannot be removed from Port facilities until all charges then owing and any charges which shall thereafter accrue are fully paid. Measures taken by the Port may include use of chains and locks, or removal from the water. The Port shall give such notices as are required by Port ordinance prior to securing vessels; however, no prior notice of such action is required in the case of transient vessels or abandoned vessels or property. . . . After 60 days, the boat or other property may be sold at public auction. The Port shall give such notices of the sale as are required by Port ordinance. . . .

13. *CHANGE OF ADDRESS.* Licensee is responsible for notifying the Port of all address changes. All billings and notices shall be deemed properly mailed to Licensee when mailed to the last address provided to the Port in writing by Licensee.

Aires made payments on the account until July 1, 1992. On February 10, 1994, the Port sent a letter by certified mail to the address Aires had provided, informing him that his account was delinquent (in the amount of $ 3,454.01) and that the Port would foreclose

---

**1.** Aires died while this appeal was pending and his estate was substituted as a party. For the sake of clarity, we will refer to Aires as the plaintiff-appellant throughout.

on its lien against the vessel unless the account was paid in full within ten days. The letter indicated that Aires could discuss his account with the Port Manager, that only the Port Manager had authority to adjust the charges, and that if he disputed the amounts owed the Port would furnish evidence of the accrued charges.

On March 16, 1994, the Port seized the KATY ANN and posted notice on the vessel to that effect, and on March 28, 1994 the Port sent notice to Aires by certified mail that the Port had secured and taken custody of the boat and planned to sell it at public auction on May 17, 1994. Aires says he did not receive this letter, which was mailed to the last address he provided to the Port but was returned as nondeliverable; nevertheless, he concedes that by April 20, 1994 he had learned that the boat was seized and would be auctioned. Aires claims that he telephoned the Port and was told by a secretary that he needed to pay the account in full to have his boat released.

Bernard Morse, the personal representative of Charlotte Aires's estate, learned of the impending sale, contacted the Port, and asked it to postpone the foreclosure sale, which it did. Morse examined the boat in the summer of 1994, found it to be in poor shape, and told the Port that the estate would not pay the outstanding moorage fees and had no objection to the Port foreclosing.

On August 19, 1994, the Port again posted notice on the KATY ANN that it had seized and taken control of the vessel and that the boat would be sold at public auction on October 21, 1994. On August 22, 1994, the Port sent notice to this effect to Aires by certified mail. On October 7 and October 14, 1994, the Port gave public notice of the auction in the *News–Times*. On October 21, 1994, the boat's electrical equipment was sold at auction and some days later the remainder of the vessel was burned at sea. By then the amount owing was $ 4,758.42; the public auction brought $ 800.00.

Aires filed suit in state court for damages for violation of his rights under the Fourth,

Fifth, and Fourteenth Amendments.[2] The Port removed to federal court, where the parties filed cross-motions for summary judgment. The district court adopted the magistrate judge's recommendation that the Port's motion for summary judgment be granted. Aires timely appealed.

## II

■ Aires contends that the Port of Newport failed to comply with due process because it was obliged to offer a meaningful hearing before or immediately after seizure of the vessel, and before the final foreclosure sale and destruction of his property, but did not do so. We disagree that the Port failed to provide Aires all the process that is constitutionally due.

■ "It is by now well established that due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Gilbert v. Homar,* —— U.S. ——, 117 S.Ct. 1807, 1812, 138 L.Ed.2d 120 (1997) (internal quotation marks and citation omitted). "Due process is flexible and calls for such procedural protections as the particular situation demands." *Id.* (citation omitted). To determine what process is constitutionally due, we apply the three-factor balancing test set forth in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), weighing:

> [f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest....

*Id.* at 335, 96 S.Ct. at 902.

The process provided to Aires by the Port suffices under this test. Aires knew from the moorage agreement he signed that he had to pay fees and charges for the moorage space and other services rendered by the Port, and that the Port could secure and sell the boat if the charges weren't paid. The Port gave pre-seizure notice several times in several different ways, and told Aires that he

---

**2.** As Aires challenged only the foreclosure process applied to the KATY ANN, the district court did not consider the facial constitutionality of Port of Newport Ordinance No. 1–1991, § 6, as amended by Port of Newport Ordinance No. 2–

1993, which specifies the process to be followed by the Port when foreclosing on abandoned vessels. We express no opinion as to the constitutionality of the ordinance on its face.

could dispute any part of the claim or discuss it with the Port Manager personally. The Port also gave notice of its plans to foreclose. Aires had more than enough time to complain, or work out a payment plan, *see* Port of Newport Ordinance 1–1991, § 6(c)(2), but never did. Nor did he post a bond, which he also could have done, and which would have entitled him to a judicial hearing. *See* Port of Newport Ordinance 1–1991, § 6(c)(3).[3]

We are satisfied that what happened in this case adequately reconciles the competing interests of the parties: the private interest in retaining ownership of a commercial fishing vessel accruing charges on municipal property; the relatively low risk of erroneous deprivation given the pre-seizure and pre-sale availability of an informal hearing before the Port Manager; and the Port's interest in removing abandoned or delinquent vessels from the marina in order to free up space and minimize the costs and dangers associated with abandoned vessels.

Aires argues that under *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), and *Stypmann v. City & County of San Francisco*, 557 F.2d 1338 (9th Cir.1977), he was entitled to a more formal hearing prior to seizure and to a judicial (or at least to a "quasi-judicial") hearing before the boat was sold at auction. In *Fuentes*, the Court considered the constitutionality of Florida and Pennsylvania statutes that permitted a creditor upon ex parte application to obtain a writ of replevin and the assistance of a sheriff to repossess the debtor's property. There, as in the Supreme Court's other pre-judgment attachment cases,[4] the debtors were surprised by the sheriff's unannounced arrival to repossess consumer goods in a way that could not reasonably have been foreseen just by reading the terms of the conditional sales contracts, and were deprived of their continued possession and use of the goods without a chance to show that a mistake had been made. Here, by contrast, the moorage agreement itself and the pre-seizure and post-seizure notices forewarned Aires and gave him plenty of opportunity to contest the moorage charges and forestall seizure or sale of the boat that was moored at the Port's facilities.

*Stypmann* is a car-towing case, where we held that a prompt post-tow hearing is required by the due process clause.[5] Aires fails to suggest how the informal hearing that he could have had with the Port Manager differs from the type of hearing that *Stypmann* requires, though he does argue that the hearing must occur before someone other than the creditor. For this he relies on *Sharrock v. Dell Buick–Cadillac, Inc.*, 45 N.Y.2d 152, 408 N.Y.S.2d 39, 379 N.E.2d 1169 (1978), which invalidated a Lien Law that provided "absolutely no safeguards against unauthorized or unnecessary repairs or storage charges," 408 N.Y.S.2d 39, 379 N.E.2d at 1177, but neither our court nor the Supreme Court requires a *judicial* safeguard in cases such as this. As the Court explained in *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 16 n. 17, 98 S.Ct. 1554, 1564 n. 17, 56 L.Ed.2d 30 (1978), "[t]he opportunity for informal consultation with designated personnel empowered to correct a mistaken

---

**3.** Port of Newport Ordinance No. 1–1991, § 6(c) provides as follows:

(C) Recovery of Possession by owner/operator: The owner/operator of a vessel or personal property secured by the Port may recover possession as follows:

 1. Making payment to the Port of all Port charges including costs incurred in securing the vessel or property, notification costs and other collection costs; or

 2. Entering into a written agreement satisfactory to the Port for installment payments of the unpaid balance ... and, in the case of commercial vessels ..., execution of a Confession of Judgment in favor of the Port for all sums then due .. ; or

 3. By posting with the Port a sufficient cash bond or other acceptable security to be held in trust by the Port pending resolution of any disputed Port charges in a civil action in a court of competent jurisdiction....

**4.** *See, e.g., North Ga. Finishing, Inc. v. Di–Chem, Inc.*, 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975); *Sniadach v. Family Fin. Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969).

**5.** *See also Scofield v. City of Hillsborough*, 862 F.2d 759, 764 (9th Cir.1988) (holding that pre-towing notice is not required for cars towable because they have not been registered for one year or more); *Draper v. Coombs*, 792 F.2d 915, 923 (9th Cir.1986) (holding Portland towing ordinance unconstitutional because it did not provide for a hearing at any point in time); *Goichman v. Rheuban Motors, Inc.*, 682 F.2d 1320, 1325 (9th Cir.1982) (holding that a hearing within 48 hours of tow satisfies due process).

determination constitutes a 'due process hearing' in appropriate circumstances." In any event, having not availed himself of the chance to complain or to challenge the charges before the Port Manager, Aires "can hardly expect that his argument on the severity of deprivation will carry much weight." *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 610, 94 S.Ct. 1895, 1901, 40 L.Ed.2d 406 (1974).

In sum, given the clear terms of the moorage agreement that Aires signed, the numerous pre-seizure and post-seizure notices detailing the consequences of failing to pay, the substantial extension that was given (at his co-owner's request), the opportunity to object and to discuss the matter with the Port Manager, Aires's failure to pursue any of the steps open to him, and the fact that Aires has never contended that there is any dispute as to the amount owed, we cannot say that the Port failed to provide the process that is constitutionally due.[6]

AFFIRMED.

**6.** Because Aires's due process claim fails, his state law claims for negligence and conversion, both of which are predicated on the unlawfulness of the Port's seizure of his vessel, also lack merit. We therefore affirm the district court's grant of summary judgment as to these claims as well.