[No. A126241. First Dist., Div. Three. June 30, 2010.]

DAVID S. ALVISO, Plaintiff and Appellant, v.
SONOMA COUNTY SHERIFF'S DEPARTMENT et al., Defendants and
Respondents.

200

**COUNSEL**

Mark T. Clausen for Plaintiff and Appellant.

Edmund G. Brown, Jr., Attorney General, Jonathan K. Renner, Assistant Attorney General, Constance L. LeLouis and Daniel J. Powell, Deputy Attorneys General, for Defendant and Respondent California Attorney General.

Steven M. Woodside, County Counsel, and Anne L. Keck, Deputy County Counsel, for Defendant and Respondent Sonoma County Sheriff's Department.

**OPINION**

**SIGGINS, J.**—Does a law that authorizes the 30-day impoundment of a vehicle driven on a revoked or suspended license violate the vehicle owner's constitutional rights? Appellant David S. Alviso, whose car was impounded pursuant to Vehicle Code sections 14602.6 and 22852, contends the statutory impoundment scheme violates state and federal constitutional principles of equal protection, due process, and freedom from unreasonable seizures. The trial court rejected these claims. So do we.

## BACKGROUND

The facts are undisputed. A Sonoma County deputy sheriff pulled Alviso over and discovered he was driving while his license was suspended due to

his previous conviction for driving while intoxicated. The basis for the stop is uncontested. Alviso was arrested for driving on a suspended license and his car was impounded pursuant to Vehicle Code section 14602.6.[1]

Alviso was provided timely written notice within two days of his right to request an administrative hearing to challenge the validity of the impoundment, but made no request. His car therefore remained impounded for 30 days. The amount of towing charges, administrative fees and storage costs Alviso was required to pay to secure release of his car exceeded its value, so he elected not to recover it.

Based upon these events, Alviso filed a class action complaint for declaratory, injunctive and monetary relief against the Attorney General, Sonoma County and the Sonoma County Sheriff's Department (the County defendants), and ABC Towing. The complaint alleged that section 14602.6 violates the equal protection provisions of the federal and state Constitutions because it authorizes a 30-day vehicle impoundment for drivers whose licenses are suspended for some, but not all, Vehicle Code violations, without a rational basis for treating the groups of drivers differently. It also alleged the 30-day impoundment without a warrant, court order or postseizure judicial review violates the unlawful seizure provisions of both the state and federal Constitutions. Based on his alleged standing both as an aggrieved party and as a taxpayer pursuant to Code of Civil Procedure section 526a, Alviso sought a judicial declaration that sections 14602.6 and 22852 are unconstitutional on their face and as applied, and injunctive relief enjoining enforcement of section 14602.6 and requiring ABC Towing to release his car or refrain from selling it pending resolution of the lawsuit. He also sought damages against the County defendants.

The Attorney General demurred to the complaint and opposed Alviso's motion for preliminary injunction.[2] The superior court declined to issue a preliminary injunction on the grounds that Alviso had not shown a threat of irreparable harm; the action was not likely to succeed on the merits; and injunctive relief is not available to a taxpayer in a suit brought under Code of Civil Procedure section 526a. The court overruled the demurrer because it was a procedurally inappropriate method for disposing of a complaint for declaratory relief, but observed that the Attorney General had "made many persuasive legal arguments regarding the constitutionality of the assailed laws" and invited the Attorney General to move for summary judgment or judgment on the pleadings.

---

[1] Unless otherwise noted, all further statutory references are to the Vehicle Code.

[2] The parties agreed that the County defendants were not required to respond to the complaint until after the court ruled on the Attorney General's demurrer. The County defendants likewise have not filed a separate responsive brief in this appeal, but join in the Attorney General's brief pursuant to rule 8.200(a)(5) of the California Rules of Court.

In light of the court's views on Alviso's constitutional arguments, the parties stipulated that a judgment could be entered against Alviso. Pursuant to that stipulation, the court entered judgment declaring sections 14602.6 and 22852 to be valid on their face and as applied. With respect to Alviso's equal protection challenges, the court concluded the distinctions drawn by the Legislature for license suspension offenses that give rise to a 30-day impound and those that do not are supported by a rational basis because the suspensions that result in the impound represent more serious violations of the Vehicle Code, and thus support the Legislature's goal of reducing traffic accidents. The court also found any imperfection in the statutory classifications did not make the statute invalid. Finally, the court rejected Alviso's argument that sections 14602.6 and 22852 violate constitutional prohibitions on unreasonable searches and seizures because the officer had probable cause to seize Alviso's car; the seizure was proper under the community caretaking doctrine; and the Fourth Amendment does not require a postseizure court hearing.

Pursuant to stipulation, the court deemed the complaint amended to include a cause of action seeking a declaration that the administrative hearing procedures provided in section 22852 violate due process. The court rejected this claim on the ground that the impoundment scheme provided in sections 14602.6 and 22852 is procedurally similar to other vehicle impound schemes that have been approved by the courts. Finally, the court found Alviso was not entitled to damages.

Alviso filed a timely appeal from the stipulated judgment.

## DISCUSSION

### I. *Preliminary Considerations*

Whether a statute is challenged facially or as applied, when the facts are not disputed, the determination of its constitutionality is a question of law that we review de novo. (*Samples v. Brown* (2007) 146 Cal.App.4th 787, 799 [53 Cal.Rptr.3d 216] [facial challenge]; *Starving Students, Inc. v. Department of Industrial Relations* (2005) 125 Cal.App.4th 1357, 1363 [23 Cal.Rptr.3d 583] [as applied].)

As stated in *Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069 [40 Cal.Rptr.2d 402, 892 P.2d 1145], a plaintiff who brings a facial challenge to the constitutionality of a statute must " ' "demonstrate that the act's provisions inevitably pose a present total and fatal conflict with applicable constitutional prohibitions." ' " (*Id.* at p. 1084; see also *id.* at p. 1111 (conc. opn. of Werdegar, J.); accord, *Samples v. Brown, supra*, 146 Cal.App.4th at

pp. 799–800.) Such a challenge succeeds where a plaintiff demonstrates the statutory scheme is unconstitutional in all cases. However, as our courts frequently observe, the standard governing a facial challenge remains the subject of controversy. Some courts determine only whether a statute conflicts with due process principles in general or in a vast majority of cases. (See *Guardianship of Ann S.* (2009) 45 Cal.4th 1110, 1126–1127 [90 Cal.Rptr.3d 701, 202 P.3d 1089]; *Kasler v. Lockyer* (2000) 23 Cal.4th 472, 502 [97 Cal.Rptr.2d 334, 2 P.3d 581]; *California Teachers Assn. v. State of California* (1999) 20 Cal.4th 327, 338 & fn. 5, 347 [84 Cal.Rptr.2d 425, 975 P.2d 622]; *American Academy of Pediatrics v. Lungren* (1997) 16 Cal.4th 307, 342–343 [66 Cal.Rptr.2d 210, 940 P.2d 797] (plur. opn. of George, C. J.); *id.* at p. 412 (dis. opn. of Baxter, J.); *id.* at p. 421 (dis. opn. of Brown, J.); *Zuckerman v. State Bd. of Chiropractic Examiners* (2002) 29 Cal.4th 32, 38–39 [124 Cal.Rptr.2d 701, 53 P.3d 119]; *Banning v. Newdow* (2004) 119 Cal.App.4th 438, 447 [14 Cal.Rptr.3d 447].) We need not resolve the controversy here because appellant cannot successfully challenge the statute under the more lenient formulation which requires him to demonstrate only that the statutory scheme is unconstitutional in the "vast majority of its applications" (*American Academy of Pediatrics, supra,* 16 Cal.4th at p. 343), or would present constitutional problems " 'in the generality of cases,' " rather than in all of them (*California Teachers Assn., supra,* at p. 347).

## II. *Equal Protection*

■ Alviso argues the impoundment statute, section 14602.6, violates equal protection because it is "grossly *underinclusive* and arbitrarily includes and excludes license suspensions based solely on their statutory origin, without regard to the seriousness of the offense giving rise to suspension." We disagree. The distinctions drawn by the Legislature between suspensions that can cause a 30-day impoundment and those that cannot are rationally related to the state's legitimate interest in reducing highway accidents, and are not so under- or overinclusive as to violate constitutional principles of equal protection.

■ In order to determine whether the legislative distinctions made in section 14602.6 run afoul of the Constitution, we apply the rational basis test. " 'The rational basis standard applies to equal protection challenges of economic and social welfare legislation under both the federal and state Constitutions. [Citations.]' [Citation.] ' " '[I]n areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification. [Citations.] Where there are "plausible reasons" for [the classification] "our inquiry is at an end." ' " ' " (*Samples v. Brown, supra,* 146 Cal.App.4th at p. 807.)

■ We will begin our inquiry with an overview of the challenged legislation. In recognition of the disproportionate number of serious accidents caused by unlicensed drivers, the Legislature enacted section 14602.6 to protect Californians from the harm they cause and the associated destruction of lives and property. (§ 14607.4, subd. (f); *Smith v. Santa Rosa Police Dept.* (2002) 97 Cal.App.4th 546, 557–559 [119 Cal.Rptr.2d 72].) To that end, when a person is caught driving without a valid license the vehicle he or she is operating must be impounded for 30 days. (§ 14602.6, subd. (a)(1).)[3] However, the impounding agency must release the impounded vehicle before the end of the 30-day period if the owner demonstrates the existence of "mitigating circumstances" (§ 14602.6, subd. (b)), or if, inter alia, the driver's license "was suspended or revoked for an offense other than those included in Article 2 (commencing with Section 13200) of Chapter 2 of Division 6 or Article 3 (commencing with Section 13350) of Chapter 2 of Division 6."[4] (§ 14602.6, subd. (d)(1)(C).) In this somewhat byzantine fashion, the Legislature established that section 14602.6 applies only to drivers whose licenses were suspended under sections 13200 through 13392. License suspensions for other reasons do not give rise to an impound under section 14602.6.

Alviso's contention that the exclusion of certain license suspensions from the impound scheme violates constitutional equal protection principles is meritless. Subdivision (d)(1)(C) was added to section 14602.6 in 1995. (Stats. 1995, ch. 922, § 3, p. 7033.) The Assembly analysis of the amendment describes it as requiring an impounding agency to release a vehicle before the end of the 30-day period " '[w]hen the driver's license was suspended or revoked *for minor or nondriving-related violations.*' " (*Smith v. Santa Rosa Police Dept., supra,* 97 Cal.App.4th at p. 562, quoting Office of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 833 (1995–1996 Reg. Sess.) as amended Sept. 12, 1995, pp. 2–3, italics added.) Such non-driving-related suspensions that are not within the scope of section 14602.6 include those for failure to maintain or provide proof of insurance (§§ 16070–16072, 16484);

---

[3] Section 14602.6, subdivision (a)(1) provides in full: "Whenever a peace officer determines that a person was driving a vehicle while his or her driving privilege was suspended or revoked, driving a vehicle while his or her driving privilege is restricted pursuant to Section 13352 or 23575 and the vehicle is not equipped with a functioning, certified interlock device, or driving a vehicle without ever having been issued a driver's license, the peace officer may either immediately arrest that person and cause the removal and seizure of that vehicle or, if the vehicle is involved in a traffic collision, cause the removal and seizure of the vehicle without the necessity of arresting the person in accordance with Chapter 10 (commencing with Section 22650) of Division 11. A vehicle so impounded shall be impounded for 30 days."

[4] Release is also required under section 14602.6, subdivision (d)(1) if the vehicle was stolen (§ 14602.6, subd. (d)(1)(A)); subject to bailment and driven by an unlicensed employee of a business (§ 14602.6, subd. (d)(1)(B)); seized for an offense that does not authorize the seizure (§ 14602.6, subd. (d)(1)(D)); or if the driver reinstates his or her license or acquires a license and proper insurance (§ 14602.6, subd. (d)(1)(E)). This appeal presents no issues concerning these other release provisions.

failure to pay child support (Fam. Code, § 17520); accumulation of excessive traffic violation points (§ 12810.5); accumulation of traffic violation points by a teen driver (§ 12814.6); failure to pay a civil judgment (§ 16370); a third conviction for passing a loading school bus without stopping (§ 22454); and driving without a court-ordered driving under the influence ignition interlock device (§ 23247, subd. (g)).[5]

Suspensions that *do* result in impoundment under section 14602.6 are primarily tied to offenses involving more dangerous behavior. These include suspensions for speeding and reckless driving (§§ 13200, 13351); driving over 100 miles per hour (§§ 13200.5, 13355); hit and run, evading a peace officer, and knowingly causing an accident to defraud an insurer (§ 13201); using a vehicle to solicit prostitution (§ 13201.5); drug offenses involving use of a vehicle (§ 13202); offenses by a minor involving a firearm (§ 13202.4); drug- and alcohol-related offenses by a minor (§ 13202.5); vandalism (§ 13202.6); habitual truancy (§ 13202.7); vehicular manslaughter (§ 13351, subd. (a)(1)); multiple convictions of hit and run (§ 13351, subd. (a)(2)); assault with a deadly weapon using a vehicle (§ 13351.5); driving under the influence and driving under the influence resulting in injury to another person (§ 13352); participating in a speed contest (§ 13352, subd. (a)(9)); auto theft (§ 13357); writing a bad check for Department of Motor Vehicle fees, penalties or bail (§§ 13364, 40508); and failures to appear involving vehicle-related offenses (§ 13365).[6]

■ This categorization adequately demonstrates a legislative effort to make a distinction designed to reduce accidents by keeping the most danger-ous drivers off the road. It is a reasonable proposition that drivers whose license suspensions are due to more serious and driving-related offenses are more likely to cause accidents than those drivers whose licenses were suspended for less serious offenses, or for offenses less closely related to their

---

[5] This is not an exhaustive list. As Alviso correctly points out, because of the way section 14602.6, subdivision (d)(1)(C) is structured, identifying all excluded violations would require a review of the entire Vehicle Code.

[6] Alviso mistakenly asserts that, because section 13954 is not one of the offenses that leads to impoundment under section 14602.6, the impoundment provision exempts drivers who (1) have an accident within five years of a manslaughter conviction; (2) have a blood-alcohol content of 0.08 percent or more; and (3) cause an accident through a prohibited act or neglect of any legal duty. That assertion is based on a misreading of section 13954, which requires *immediate* administrative license suspension or revocation when the Department of Motor Vehicles has reason to believe a driver was involved in an accident *when all three of those circumstances are present*—i.e., that the driver caused an accident while under the influence and within five years of a previous conviction for vehicular manslaughter. (§ 13954, subd. (a).) When that happens, the driver's license is subject to immediate suspension. However, an accident that satisfies all three elements of section 13954 would also necessarily trigger a 30-day impoundment because one of the elements of the violation is driving under the influence. (§ 13352.)

driving abilities. While some license suspensions that are not encompassed by section 14602.6 also seem to reflect on a driver's ability, and some suspensions that trigger impoundment seem relatively minor or unrelated to safe driving, such incidental overinclusion and underinclusion does not invalidate section 14602.6 under equal protection principles. "In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' [Citation.] 'The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific.' " (*Dandridge v. Williams* (1970) 397 U.S. 471, 485 [25 L.Ed.2d 491, 90 S.Ct. 1153]; see *Warden v. State Bar* (1999) 21 Cal.4th 628, 649 [88 Cal.Rptr.2d 283, 982 P.2d 154].)

■ Moreover, the examples of suspensions which Alviso claims, "are largely if not completely unrelated to the safe operation of a vehicle or propensity to be involved in a traffic accident" include a number of examples that could reasonably be disputed. For example, the Legislature could reasonably believe that a minor who has used drugs or alcohol or is habitually truant is more likely to pose a danger behind the wheel than an adult who has committed similar offenses. The Legislature could also conclude that impounding vehicles of individuals whose licenses are suspended for using a vehicle when soliciting prostitution or committing a drug offense serves the goal of preventing further offenses by drivers who continue to drive despite a suspension. As the People observe, nothing in the equal protection clause prohibits the Legislature from seeking to reduce crime while also increasing traffic safety.

Alviso disagrees. He argues that the legislative intent behind section 14602.6 and the underlying data concerning the risk to the public posed by unlicensed drivers "do not differentiate between the underlying statutory basis [*sic*] for suspension; nor do they suggest that some suspensions are less likely to contribute to accidents and property damage than others and should accordingly be exempted from impound, or that subdivision (d)(1)(C) was designed to effectuate such a Legislative intent. [¶] . . . Nowhere is there found any indication that the Legislature intended to exclude from section 14602.6 certain suspensions deemed less serious than others." He premises this argument on the discussion of section 14602.6's legislative history in *Smith v. Santa Rosa Police Dept., supra,* 97 Cal.App.4th 546, and in particular on *Smith*'s observation that the Safe Streets Act was intended to require the 30-day impoundment of *any* vehicle driven on a suspended or revoked license. (See 97 Cal.App.4th at p. 560.) However, the discussion in *Smith* that Alviso cites concerns the legislative history of section 14602.6 *as*

*originally enacted* in 1994. The exclusions codified in section 14602.6, subdivision (d)(1)(C) that Alviso argues make section 14602.6 unconstitutional were added by amendment in 1995 through Senate Bill No. 833 (1995–1996 Reg. Sess.). "According to the [Assembly] analysis, Senate Bill No. 833 '[c]larifies the application of the vehicle impoundment provisions and specif[ies] conditions and procedures for the release of a vehicle prior to 30 days.' " (*Smith, supra,* at p. 562.) The analysis plainly reflects a distinction between " 'minor or nondriving-related' " violations (*ibid.*), on the one hand, and more serious violations on the other. The court correctly rejected Alviso's equal protection challenge.

### III. *Due Process*

■ Under section 14602.6, subdivision (b), the owner of a seized car is entitled to an administrative hearing pursuant to section 22852 to determine the validity of, or consider any mitigating circumstances attendant to, the impoundment. The hearing must be conducted within two workdays of a request, and may be conducted by an officer or employee of the public agency that impounded the vehicle "if the hearing officer is not the same person who directed the storage of the vehicle." (§ 22852, subd. (c).) Although Alviso received timely notice of his right to seek an administrative hearing under section 22852, he declined to request one. He now asserts sections 14602.6 and 22852 violate constitutional rights to notice and a fair hearing because they do not provide for judicial review of the impoundment. Case law rejects Alviso's assertion and so do we.

*Conner v. City of Santa Ana* (9th Cir. 1990) 897 F.2d 1487 is on point. Santa Ana removed several old and seemingly inoperable automobiles from the Conners' backyard pursuant to a junk car abatement ordinance. The Conners participated in an administrative hearing to contest the removal, but were unsuccessful. The cars were ultimately destroyed. (*Id.* at p. 1489.) On appeal from summary judgment in favor of the city on the Conners' lawsuit, the Conners made the same argument Alviso makes now: that the city deprived them of their property without due process because there was no judicial involvement in the administrative process available to challenge the seizure.

■ The Ninth Circuit soundly rejected the argument. "The fundamental requirements of procedural due process are notice and an opportunity to be heard before the government may deprive a person of a protected liberty or property interest. *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976). There is no requirement, however, that a court must be involved in the process in order to comply with the constitution. *Jordan v. City of Lake Oswego,* 734 F.2d 1374, 1376 n. 1 (9th Cir. 1984) ('There is no

constitutional requirement that the decisionmaker be an uninvolved person when a property interest protected by due process is at stake.'); *Price v. City of Junction, Texas,* 711 F.2d 582, 589 n. 5 (5th Cir. 1983) ('There is no requirement that the impartial tribunal be a judicial tribunal.'); *Stretten v. Wadsworth Veterans Hospital,* 537 F.2d 361, 369 n. 18 (9th Cir. 1976) (same). *See also Schweiker v. McClure,* 456 U.S. 188 [72 L.Ed.2d 1, 102 S.Ct. 1665] (1982) (judicial involvement not required to meet the due process demand of an impartial tribunal)." (*Conner v. City of Santa Ana, supra,* 897 F.2d at pp. 1492–1493.) Accordingly, the court concluded due process was satisfied through the opportunity to be heard in an administrative hearing, and to seek judicial review of the administrative finding under Code of Civil Procedure section 1094.5. (*Conner,* at pp. 1492–1493; accord, *Hupp v. City of Walnut Creek* (N.D.Cal. 2005) 389 F.Supp.2d 1229, 1233–1234 [granting summary judgment against claim that § 22852 is unconstitutional because it does not provide for judicial review and authorizes adjudications by hearing officers employed by the impounding agency]; see also *Higgins v. Port of Newport* (9th Cir. 1997) 121 F.3d 1281, 1284–1285 [nonjudicial foreclosure sale did not violate due process rights].)

The case authorities Alviso claims support a right to a judicial, rather than administrative, hearing provide no such support. *Krimstock v. Kelly* (2d Cir. 2002) 306 F.3d 40 holds that owners of vehicles seized for forfeiture under a municipal ordinance are entitled to a prompt postseizure hearing. Far from suggesting that the hearing must be judicial, however, the Second Circuit held that due process requires owners "be afforded a prompt post-seizure, pre-judgment hearing before a neutral *judicial or administrative officer* . . . ." (*Id.* at p. 67, italics added.) Similarly, *Smith v. City of Chicago* (7th Cir. 2008) 524 F.3d 834 addresses an ordinance authorizing the seizure of vehicles, aircraft, vessels and money involved in certain drug crimes, and concludes "that given the length of time which can result between the seizure of property and the opportunity for an owner to contest the seizure . . . *some sort of mechanism* to test the validity of the retention of the property is required. . . . The hearing should be prompt but *need not be formal.*" (*Id.* at p. 838, italics added.) And in holding the Constitution requires a prompt postseizure hearing when the government seizes property in satisfaction of a tax lien, the Supreme Court of the United States expressly noted in *Commissioner v. Shapiro* (1976) 424 U.S. 614 [47 L.Ed.2d 278, 96 S.Ct. 1062] that "[n]othing we hold today, of course, would prevent the Government from providing an administrative or other forum outside the Art. III judicial system for whatever preliminary inquiry is to be made as to the basis for a jeopardy assessment and levy." (*Id.* at p. 630, fn. 12.)

■ *Ross v. Duggan* (6th Cir. 2004) 402 F.3d 575, *County of Nassau v. Canavan* (2003) 1 N.Y.3d 134 [770 N.Y.S.2d 277, 802 N.E.2d 616], *Department of Law Enforcement v. Real Property* (Fla. 1991) 588 So.2d 957

(applying Fla. law), *State ex rel. Schrunk v. Metz* (1993) 125 Or.App. 405 [867 P.2d 503], and *Pollgreen v. Morris* (S.D.Fla. 1980) 496 F.Supp. 1042, all of which concern challenges to statutes authorizing seizure of property for the purpose of permanent forfeiture, are silent as to whether due process requires a judicial, rather than administrative, postseizure hearing. Other cases Alviso cites address the warrantless seizures of property in connection with criminal investigations and prosecutions and failures to provide prompt probable cause hearings to people arrested without a warrant. (See *County of Riverside v. McLaughlin* (1991) 500 U.S. 44 [114 L.Ed.2d 49, 111 S.Ct. 1661]; *Gerstein v. Pugh* (1975) 420 U.S. 103 [43 L.Ed.2d 54, 95 S.Ct. 854]; *People v. Link* (1994) 26 Cal.App.4th 1272, 1278–1279 [32 Cal.Rptr.2d 149].) Because those cases involve circumstances which call into play significantly different considerations than the temporary civil impoundment authorized by section 14602.6, they do not inform our present inquiry. " ' "[D]ue process," unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.' [Citation.] '[D]ue process is flexible and calls for such procedural protections as the particular situation demands.' " (*Mathews v. Eldridge, supra*, 424 U.S. at p. 334.)

 Analysis of the administrative hearing scheme provided in sections 14602.6 and 22852 under the factors articulated by the Supreme Court in *Mathews* leads us independently to conclude, like the courts in *Conner* and *Hupp*, that due process in this context does not require a postseizure judicial hearing. "[R]esolution of the issue whether the administrative procedures provided . . . are constitutionally sufficient requires analysis of the governmental and private interests that are affected. [Citations.] More precisely, our prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." (*Mathews v. Eldridge, supra*, 424 U.S. at pp. 334–335.)

 The private interests here are financial and personal convenience: the availability of personal transportation, and the cost of fees, towing and storage required to redeem one's vehicle after the impound. If the car is released after the administrative hearing provided upon request under section 22852, it is done relatively quickly and the storage cost to the owner whose car was wrongfully impounded (or who can show mitigating circumstances) is relatively minimal. Even full impoundment that can last only 30 days under the statute will not dispossess an owner of an enormous sum—although we acknowledge that what constitutes an enormous sum depends to some extent,

like beauty, on the eye of the beholder. Moreover, while the temporary loss of use of one's vehicle can affect constitutionally significant interests in access to work, school, recreation, travel, and other of life's necessities (see, e.g., *Krimstock v. Kelly, supra*, 306 F.3d at p. 61; *Coleman v. Watt* (8th Cir. 1994) 40 F.3d 255, 260–261; *Stypmann v. City and County of San Francisco* (9th Cir. 1977) 557 F.2d 1338, 1343), here, as in most impoundments authorized under section 14602.6, Alviso was not lawfully permitted to drive during the period of impound. "[P]rocedural due process rules are shaped by the risk of error inherent in the truthfinding process as applied to the generality of cases, not the rare exceptions." (*Mathews v. Eldridge, supra*, 424 U.S. at p. 344.) Accordingly, in light of his suspension, Alviso's only legitimate interest, and that at stake in the "generality of cases," is in the monetary cost of the impoundment.[7] On the other hand, vehicle owners entitled to immediate release—e.g., because their car was stolen or they unknowingly lent it to an unlicensed driver (§ 1402.6, subds. (b), (d); *Smith v. Santa Rosa Police Dept., supra*, 97 Cal.App.4th 546)—are entitled to a hearing within two business days of their request for one. Such a temporary deprivation of their car for two days does not have constitutional significance. (See *Goichman v. Rheuban Motors, Inc.* (9th Cir. 1982) 682 F.2d 1320, 1325 [hearing held within 48 hours of towing under § 22852 satisfies due process requirement of prompt redress].)

 The second factor in our analysis under *Mathews* is the risk of erroneous deprivation, and here it appears to be relatively low. To decide whether a vehicle is to remain impounded for 30 days, the hearing officer must decide whether the driver was unlicensed, driving on a suspended or revoked license, or driving without a required driving under the influence ignition interlock device. (§ 14602.6, subd. (a)(1).) To determine whether a circumstance exists that requires release of a vehicle prior to 30 days, the hearing officer must determine whether the car was stolen (§ 14602.6, subd. (d)(1)(A)); if it was driven by an unlicensed employee of a parking service, garage or similar business (§ 14602.6, subd. (d)(1)(B)); if the driver's license was suspended or revoked for an excluded offense (§ 14602.6, subd. (d)(1)(C)); if the car was seized for an offense that does not authorize seizure (§ 14602.6, subd. (d)(1)(D)); or if the driver has reinstated his or her license (§ 14602.6, subd. (d)(1)(E)). These circumstances that bear upon the

---

[7] Alviso disagrees because, he says, at some point he became eligible to regain his license but no longer had a car to drive. He does not cite to anything in the record that shows he could have regained his license during the 30-day suspension period. In any event, under section 14602.6 the impounding agency must immediately release the vehicle to its owner "[w]hen the driver reinstates his or her driver's license or acquires a driver's license and proper insurance." (§ 14602.6, subd. (d)(1)(E).) If Alviso was actually eligible to reinstate his license during the impoundment period, he could thus have had his car released upon proof of reinstatement and insurance and payment of towing and storage charges incurred up to that point.

length and legality of impoundment under section 14602.6 are straightforward determinations that can often be proven with documentation and will rarely, if ever, be in serious dispute.

The possibility of early release due to "mitigating circumstances" (§ 14602.6, subd. (b)) introduces a substantially more amorphous basis for release, as the Legislature provided little, if any, guidance, as to what such factors may be. (See *Smith v. Santa Rosa Police Dept., supra*, 97 Cal.App.4th at pp. 549–550, 554–568.) In situations where mitigating factors might come into play, the risk of a bad call by the hearing officer is undoubtedly greater than where the decision hinges on such clear-cut factors as the reason supporting license suspension or revocation. But this lack of imprecision does not make section 14602.6 invalid.

Alviso cites us to *Samples v. Brown, supra*, 146 Cal.App.4th 787, in which Division Two of this court noted the existence of "evidence in the record suggesting that at least some agencies have no written policies governing the mitigating circumstances inquiry and instead employ their own subjective criteria to determine what constitutes a mitigating circumstance." (*Id.* at p. 807.) "Equally troubling," the *Samples* court wrote, "is evidence suggesting that many agencies do not consider the vehicle owner's lack of actual knowledge regarding the driver's licensing status to be a mitigating circumstance under section 14602.6(b) notwithstanding this court's decision in *Smith, supra*, 97 Cal.App.4th 546." (*Ibid.*) But while the court thus questioned the conduct of agencies "who ignore our holding in *Smith* or in some other way circumvent the safeguards designed to ensure proper enforcement of section 14602.6," it also observed that "[i]ndividuals who believe this statute has been improperly or illegally applied to them may seek redress in the courts. As the United States Supreme Court observed long ago, it is 'constitutionally sufficient if Congress clearly delineates the general policy, the public agency which is to apply it, and the boundaries of this delegated authority. Private rights are protected by access to the courts to test the application of the policy in the light of these legislative declarations.' " (*Ibid.*) The *Samples* court's observation answers Alviso's suggestion that the alleged misapplication of section 14602.6 by enforcement agencies renders the statute itself unconstitutional on its face or as applied.[8] Given the straightforward nature of most determinations that must be made in a postimpound hearing, the risk of erroneous deprivation does not weigh in Alviso's favor.

---

[8] Alviso's attorney relies heavily on an unpublished opinion from the Second District, *Navarro v. County of Los Angeles* (May 16, 2006, B182248 [nonpub. opn.]) for his point that local agencies are not properly applying *Smith*. But the case is unpublished and, therefore, not to be cited as authority. (Cal. Rules of Court, rule 8.1115.) This and appellant's counsel's other citations to unpublished or depublished opinions are in clear violation of rule 8.1115. Counsel is to comply with rule 8.1115 in all future filings, or risk having his briefs rejected for filing.

The third factor in *Mathews* requires that we consider "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." (*Mathews v. Eldridge, supra,* 424 U.S. at p. 335.) We recognize that the government has a strong interest in keeping unlicensed drivers off the roads, both by temporarily impounding their vehicles and by deterring them from driving on suspended or revoked licenses in the first place. (See *Smith v. Santa Rosa Police Dept., supra,* 97 Cal.App.4th at p. 558.) It also has an interest in providing prompt and efficient hearings before the impounding agency, where the records necessary to show whether the vehicle was properly impounded are presumably maintained and accessible.

We are satisfied that the hearing procedure provided by section 22852 adequately reconciles the competing interests of the parties: the private interest in avoiding the cost and disruption entailed by impoundment of one's automobile; the relatively low risk of erroneous deprivation given the straightforward nature of most of the determinant factors; and the governmental interest in efficiently and effectively keeping the most dangerous drivers off the road. Accordingly, the impound scheme does not violate due process.

## IV. *Search and Seizure*

Our conclusion that the prompt administrative hearing provided under sections 14602.6 and 22852 satisfies the requirements of due process dispenses also with Alviso's contention that the impoundment provisions authorize an unlawful seizure in violation of the state and federal Constitutions, which rests on the same premise—i.e., that the Constitution requires postseizure *judicial* review. Alviso does not challenge the initial seizure of his or any other vehicle under section 14602.6, but "only the continued warrantless retention of the vehicle for 30 days or more without post-seizure *judicial* review." Since the validity of the initial seizure is therefore not at issue and our analysis under *Mathews* satisfies us that the administrative hearing available on two days' notice satisfies due process requirements for the government's continued retention of the seized vehicle during the 30-day impoundment, the statutory scheme does not effect an unconstitutional seizure.

Because the trial court correctly rejected Alviso's substantive constitutional challenges to the vehicle impoundment statutes, it also properly denied his request for a preliminary injunction to enjoin their enforcement. We therefore need not and do not address Alviso's challenge to the established law that injunctive relief is not available to a taxpayer in a suit brought under Code of Civil Procedure section 526a.

## DISPOSITION

The judgment is affirmed.

McGuiness, P. J., and Jenkins, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 13, 2010, S185255.