Filed 1/23/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of D.S. and A.S. | H049337 (San Benito County Super. Ct. Nos. FL-21-00057 & DV-21-00032) |
| D.S., Appellant, v. A.S., Respondent. | |

Appellant D.S. appeals a domestic violence restraining order (DVRO) enjoining him from certain conduct and contact with his wife, A.S, and their two minor children.[1] D.S. contends the family court abused its discretion in granting A.S.'s request for a DVRO without holding an evidentiary hearing compliant with Family Code section 217 and that the DVRO was not supported by substantial evidence.[2] Because the trial court did not conduct a hearing as required both by Family Code section 6340 and principles of

---

[1] D.S.'s notice of appeal, filed on August 9, 2021, stated that D.S. appealed from the order entered on June 11, 2021. The DVRO hearing was held on June 11, 2021, and the court's minutes reflect the issuance of the restraining order at that hearing. Thereafter, the court issued a written restraining order after hearing on July 14, 2021. The court then amended the restraining order twice on August 5, 2021, to correct clerical errors.

[2] Further undesignated statutory references are to the Family Code.

due process, we reverse and remand the matter so that a proper hearing may be conducted to determine whether a domestic violence restraining order should issue.[3]

## I. FACTUAL AND PROCEDURAL BACKGROUND

D.S. and A.S. were married and have two minor children, ages fourteen and eight. After approximately nine years of marriage, A.S. filed a petition for legal separation (hereafter, family law matter). On the same date, A.S. also filed an ex parte request for temporary emergency orders related to child custody and visitation, property control, and "an order that all contact between Mother and Father be peaceful and neither party disparage the other, alienate the children nor discuss details of the custody case with the child." In support, she alleged that D.S. had a "trigger temper" and "outbursts at any time," that "[w]e are always on eggshells" and that the "children and I have had to flee the home multiple [times] when his anger has gotten out of control." She stated that she did not have access to the family's bank accounts. She alleged that "when he is not in one of his outbursts," D.S. had a "great relationship" with the children, who "adore him." After the court denied her ex parte request, A.S. filed, and was granted, a peremptory challenge against the judge who issued the denial.

A week later, on April 19, 2021, A.S. filed a request for a DVRO, which sought both personal conduct orders and a stay away order. In describing the alleged abuse, A.S. identified two dates, April 8 and February 15, 2021, on which she and her children had suffered abuse. In lieu of a written declaration describing past abuse, A.S. attached several typed pages of what appeared to be transcripts of alleged interactions between A.S., D.S., and the children. These pages were interposed with A.S.'s comments interpreting the tone of voice of the events' participants and describing the reactions of the children to the exchanges between the parties. Without providing further detail, A.S.

---

[3] Respondent did not file a respondent's brief in this action. We decide this case on the record on appeal and appellant's opening brief. (Cal. Rules of Court, rule 8.220(a).)

also asserted that D.S. had threatened to use a gun on himself twice in the past. The court denied A.S.'s request for a temporary restraining order and set the matter for hearing, finding that the facts stated in A.S.'s request did not show reasonable proof of a past act or acts of abuse.

On April 26, 2021, A.S. filed an amended request for a DVRO, alleging that D.S. had abused alcohol throughout their marriage, smoked marijuana and used other drugs, and had driven drunk with the children in the car. A.S. further alleged that D.S. owned over ten registered and unregistered guns which he left accessible to the children. Without any further description, A.S. stated that "[t]here have been many incidents where he becomes aggressive and violent when under the influence." She indicated that she had eight videos of D.S. "being verbally and emotionally abusive to the children and I, which have occurred in the last 18 months. I can present these videos to the Court as evidence of Father's abuse." She attached the same annotated transcripts to her request. A.S. contended that D.S.'s conduct, including verbal and emotional abuse and control of the family's finances and changing account passwords (though she retained access to their credit cards through Apple Pay), constituted a disturbance of the peace under section 6320, subdivision (c). The court issued a temporary restraining order and ordered that D.S. have no visitation with the children pending the DVRO hearing.

D.S. filed a written response to A.S.'s amended DVRO request, asserting that she had "grossly exaggerated" his conduct and "relied upon inadmissible evidence of what she calls abuse." He specifically stated that he was "not abusive in any way," that the described events were "also not supportive of a request for orders pursuant to the DVPA [Domestic Violence Prevention Act, section 6200 et seq.]," and that A.S.'s "allegations are similarly without merit." He contended that "[t]his should be a family law action not a domestic violence action." He denied abusing alcohol. Although D.S. did not agree to the issuance of a DVRO, he stated he would agree to joint legal and physical custody of the children and to voluntarily stay away from A.S. and have no contact with her except

3

to exchange their children.  D.S. also requested an exemption from the firearms prohibition, but in the interim voluntarily surrendered ten firearms to the San Benito County Sheriff's Office and attached a receipt documenting his compliance with the firearm surrender order.

At an interim hearing on May 25, 2021, the court modified the no contact provision of the temporary restraining order "for purposes of discussion of the court case."  The court stated, "From reading your paperwork, you've been able to do so much together successfully that this is sort of a bump in the road here . . . ."  A.S. asserted that "the reason for the restraining order, Your Honor, was so that I can . . . keep the children safe."  The court maintained the temporary restraining order and continued the hearing to June but authorized the parties to mediate their case in the interim.

At the continued hearing on June 11, 2021, both parties represented themselves. Neither party filed a witness list nor otherwise sought to introduce live evidence at the hearing.  At the outset of the hearing the court inquired, and A.S. confirmed, that everything stated in her declaration in support of her DVRO request was true and correct. The court then turned to D.S., stating, "I think you disagreed with some of these orders on your responsive declaration."  Without further inquiry, the court stated, "[i]t sounds like you do not disagree that you will stay away from her—that you will follow the conduct orders and that you would move out, but you want to do those voluntarily and not by court order."  D.S. confirmed that he would voluntarily comply with family law conduct orders.  He did not agree to the issuance of a domestic violence restraining order. He then engaged in a brief colloquy with the court regarding his concern that he would lose access to firearms as a result of a restraining order as he had hunting trips planned with his brothers.  This effectively concluded the DVRO portion of the hearing, as the court next stated, "I think you're going to lose your guns . . . I am forbidding you from obtaining, owning, borrowing . . . or in any way having guns or firearms or

4

ammunition . . . . The court then addressed the status of the family residence and the parties' two dogs.

The court made no further inquiry of D.S. regarding the allegations in A.S.'s declaration or his denial of those allegations. The court did not address or rule on the hearsay objections and other objections to the legal sufficiency of A.S.'s claims raised in D.S.'s declaration. Neither party was sworn as a witness and the court did not seek any testimony from either party regarding the abuse allegations. Neither party sought to introduce additional testimony, witnesses, or other evidence regarding the DVRO, and the court did not ask if either party wished to call any witness or admit any additional evidence.

The court concluded by stating, "So I'm going to issue the restraining order, which includes the personal conduct orders, the stay-away orders . . ." and later indicated that the order was effective for three years. The remainder of the proceeding addressed temporary custody and visitation orders, and the parties' temporary financial arrangements. The court accepted the parties' agreement that D.S. continue paying the mortgage, household bills and $1,000 monthly to A.S. until more detailed orders related to their finances could be established. The court granted sole legal and physical custody of the children to A.S., granted D.S. visitation Sundays and Wednesdays, and accepted stipulations regarding temporary child and spousal support. The restraining order was subsequently amended three times.

D.S. timely appealed the DVRO.

## II. DISCUSSION

D.S. contends that the trial court erred on two grounds in issuing the DVRO. First, he contends that the trial court abused its discretion and denied him due process by issuing a restraining order based solely on declarations without receiving live testimony or evidence as required by section 217. Second, he argues that substantial evidence did not support the issuance of a DVRO because no evidence was admitted at the hearing and

5

because, even if the court could rely solely on the declarations, A.S.'s declaration was facially insufficient to support issuance of a DVRO. In support, he asserts that the alleged transcripts upon which A.S. relied in support of her DVRO request do not objectively evidence a disturbance of A.S.'s peace. We conclude that the trial court abused its discretion when it issued the restraining order without a hearing that comported with due process. We therefore reverse.

On appeal we review the trial court's grant or denial of a DVPA restraining order request for abuse of discretion. (*In re Marriage of Davila & Mejia* (2018) 29 Cal.App.5th 220, 226.) " 'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason.' [Citation.]" (*Gonzalez v. Munoz* (2007) 156 Cal.App.4th 413, 420 (*Gonzalez*).) " 'If the court's decision is influenced by an erroneous understanding of applicable law or reflects an unawareness of the full scope of its discretion, the court has not properly exercised its discretion under the law. [Citation.] Therefore, a discretionary order based on an application of improper criteria or incorrect legal assumptions is not an exercise of informed discretion and is subject to reversal. [Citation.]' [Citation.] The question of whether a trial court applied the correct legal standard to an issue in exercising its discretion is a question of law [citation] requiring de novo review. [Citation.]" (*Eneaji v. Ubboe* (2014) 229 Cal.App.4th 1457, 1463.) "We independently review due process claims 'because "the ultimate determination of procedural fairness amounts to a question of law." ' " (*Roth v. Jelly* (2020) 45 Cal.App.5th 655, 666.)

Under the Domestic Violence Prevention Act (§ 6200 et seq.), the court may issue a DVRO "if an affidavit or testimony and any additional information provided . . . shows, to the satisfaction of the court, reasonable proof of a past act or acts of abuse." (§ 6300, subd. (a).) The purpose of the act is to prevent the recurrence of domestic violence by ensuring a period of separation if such acts are proved. (§ 6220; *Nevarez v. Tonna* (2014) 227 Cal.App.4th 775, 782.) Although the court may issue a DVRO based solely on the

6

affidavit or testimony of the person requesting the order, it may do only "after notice and a hearing." (§§ 6300, 6340, subd. (a).) Section 6300 does not obviate the requirement for a hearing at which the respondent is allowed to state his or her position on the issuance of the DVRO and refute the allegations in the DVRO request. (§ 6340; *In re Marriage of F.M. & M.M.* (2021) 65 Cal.App.5th 106, 117 ["a trial court should, of course, hear and evaluate the evidence relating to incidents set forth in a petitioner's request"].)

In the matter before us, D.S. appropriately does not challenge the adequacy of the notice. He received A.S.'s amended DVRO request and filed a written response to her request. D.S. instead challenges the adequacy of the court's hearing, asserting that the court violated section 217 by not eliciting witness testimony. While we understand D.S.'s argument, we conclude it is inapposite. Although DVPA hearings are subject to section 217, neither party here sought to present live testimony. (§ 217, subds. (a) & (b); see also Cal. Rules of Court, rule 5.113.) Instead, the defects in the DVRO hearing present a more fundamental denial of due process.

As one court observed, "[i]t is rare for a Court of Appeal to get a peek into the world of domestic violence proceedings, because these protective orders are nearly never appealed. We know something about these proceedings, not so much from the appellate brief and oral arguments, but because of judicial administration studies and innovations over the past few years." (*Ross v. Figueroa* (2006) 139 Cal.App.4th 856, 861 (*Ross*).) Litigants in DVRO proceedings "are unrepresented by counsel in the vast majority of cases," as they were here. (*Id.* at p. 861 & fn. 3 ["In domestic violence restraining order cases, litigants are reported to be pro se over 90 percent of the time."].) This high percentage of self-represented litigants places a special burden on bench officers hearing these restraining order requests. Our family courts are daily faced with the needs of self-represented litigants, the requirements of judicial neutrality, and the need for judicial efficiency. These interests require delicate balancing, but allowance must be made for

7

the status of the parties appearing before the court. In a contested restraining order hearing, the trial court is tasked with protecting the fundamental due process rights of self-represented litigants both seeking a restraining order or defending against the request, even when they do not fully understand what those rights encompass. (*Id*. at p. 867.)

Here, it appears that the trial court believed that it was empowered to issue a restraining order based solely on the written declarations of the parties with no further inquiry. Indeed, the language of section 6300, subdivision (a) permits the issuance of a restraining order based solely on an affidavit: "The court may issue an order under this part based solely on the affidavit or testimony of the person requesting the restraining order." (§ 6300, subd. (a).) But section 6300 should not be read to override the due process requirements that provide for a hearing under section 6340. "Court procedures, however well-intentioned, should not be imposed at the expense of the parties' basic rights to have their matters fairly adjudicated: 'That a procedure is efficient and moves cases through the system is admirable, but even more important is for the courts to provide fair and accessible justice.' [Citation.]" (*Gonzalez, supra*, 156 Cal.App.4th at p. 423.) As we noted in *In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483 in the context of whether to allow oral testimony in a domestic violence proceeding, "[i]n exercising its discretion to either allow or exclude oral testimony, however, the trial court should be guided by the constitutional principle that '[d]ue process guarantees " 'notice and opportunity for *hearing appropriate to the nature of the case.*' " [Citation.]' [Citation.]" (*Id.* at p. 1500.)

Due process requires "the right to be heard in a meaningful manner." (*In re James Q.* (2000) 81 Cal.App.4th 255, 265.) "A meaningful hearing requires an opportunity to examine evidence and cross-examine witnesses. . . ." (*In re Crystal J.* (1993) 12 Cal.App.4th 407, 413.) As the court in *Ross* accurately observed, the fact that DVRO litigants are frequently self-represented "influences how these hearings should be

8

conducted—with the judge necessarily expected to play a far more active role in developing the facts, before then making the decision whether or not to issue the requested permanent protective order. In such a hearing, the judge cannot rely on the pro per litigants to know each of the procedural steps, to raise objections, to ask all the relevant questions of witnesses, and to otherwise protect their due process rights." (*Ross*, *supra*, 139 Cal.App.4th at p. 861.) "The role of a judicial officer sitting in such a court, which has many attributes of an inquisitorial as opposed to an adversarial process, is different than when sitting in a purely adversarial court where the parties are presumed to be 'well counseled' by skilled and knowledgeable lawyers. In a purely adversarial setting it is reasonable for the judge to sit back and expect a party's lawyer to know about and either assert or by silence forfeit even the most fundamental of the party's constitutional and statutory procedural rights. But not so in a judicial forum, such as this domestic violence court, which can expect most of those appearing before the court to be unrepresented." (*Id.* at pp. 866-867.)

The conduct of the hearing in this matter fell far short of providing D.S. a meaningful opportunity to be heard. Although D.S. filed a written response to A.S.'s amended request for a DVRO, disputing A.S.'s allegations and objecting to her evidence, the court made no inquiry whatsoever as to the basis for his objections. D.S.'s written response should have alerted the trial court that it had an obligation to ask questions designed to ascertain the truth of the allegations and the admissibility of the evidence A.S. sought to provide to the court through videos and transcripts. D.S. accused A.S. of "forum shopping" for a DVRO, stated that she "grossly exaggerated" his conduct, and "relied upon inadmissible evidence of what she calls abuse." He described the April 8, 2021, events as simply a conversation with his son regarding the parties' legal separation and denied that he was abusive "in any way" in that interaction. D.S. asserted that the incident of February 15, 2021, was "also not supportive of" A.S.'s request for a DVRO. In short, the material facts were disputed, as was the legal question of whether any acts, if

9

they occurred, constituted abuse as defined under section 6203, subdivision (a)(4). Yet the court received no testimony and made no effort to probe the parties to determine their credibility. In this case, it is not possible that the court could reasonably have made any credibility determinations or resolved the material factual disputes based solely on the pleadings alone. (See *In re Jessica C.* (2001) 93 Cal.App.4th 1027, 1043 ["[a] trier of fact is free to disbelieve a witness . . . if there is any rational ground for doing so."]; Evid. Code, § 780 [in determining the credibility of a witness, the court may consider, among other things, the "demeanor while testifying and the manner in which" a witness testifies.].)

To be sure, there are instances in which a DVRO request is either unchallenged or the declaration in support of the request, if not materially disputed, so clearly describes abuse under the legal standard that a family court may issue a DVRO after a brief hearing that consists of minimal questioning of the petitioner and respondent confirming that the declarations are true. Such a hearing may well comport with due process based on the position of the parties regarding the DVRO request and the nature of the evidence in support of or refuting the restraining order request. But the conduct of the hearing in this matter was fundamentally unfair. The court did not invite either party to present their version of events and did not question either party or allow an opportunity for cross-examination on the disputed issues. The court thus effectively deprived D.S. of an opportunity to be heard on the material factual dispute and legal issue before the court. (See *Alviso v. Sonoma County Sheriff's Dept.* (2010) 186 Cal.App.4th 198, 209 ["The fundamental requirements of procedural due process are notice and an opportunity to be heard"].)

The remedy for this denial is a new hearing that comports with due process. (*Lovato v. Santa Fe Internat. Corp.* (1984) 151 Cal.App.3d 549, 554-555 [" 'Where the unsuccessful party has been prevented from exhibiting fully his case . . . there has never been a real contest in the trial or hearing of the case, [which is a] reason[ ] . . . [to] open

10

the case for a new and fair hearing' "].) Sometimes, in court, "things simply go so far awry that the only fair resolution is a 'do-over.' " (*Gamet v. Blanchard* (2001) 91 Cal.App.4th 1276, 1285.) In the instant case, "[e]vents diverged so far from any reasonable person's idea of a fair day in court that a 'do-over' is surely warranted." (*Ibid*.)

However, D.S. argues that A.S.'s petition was facially inadequate to support the issuance of a DVRO, thus requiring us to reverse the order in its entirety. We disagree with his assessment of the pleadings. We note that A.S. stated in her declaration that "[t]here have been many incidents where [D.S.] becomes aggressive and violent when under the influence." For his part, D.S. maintained that there was no physical abuse, that both parties drink socially, and that A.S. "grossly exaggerated" his conduct.

Section 6203, subdivision (a) provides that "[f]or purposes of this act, 'abuse' means any of the following: . . . (4) To engage in any behavior that has been or could be enjoined pursuant to Section 6320." (§ 6203, subds. (a)(1), (4).) Section 6320 in turn enjoins conduct that includes "molesting, attacking, striking, stalking, threatening, sexually assaulting, battering . . . or disturbing the peace of the other party." (§ 6320, subds. (a), (c).) Given A.S.'s declaration that D.S. was violent on several occasions, we conclude that due process also requires that she be provided the opportunity to present evidence at a hearing so that the trial court can determine whether such incidents occurred, whether they constitute abuse under section 6203, and whether a restraining order should issue.

We do not conclude that the evidence here is sufficient or insufficient as a matter of law to support the issuance of a restraining order. At oral argument, appellant conceded that we should reverse to allow a hearing at which A.S. is provided the opportunity as the moving party to present evidence in support of her request for a DVRO, and D.S. the opportunity to as the responding party to present evidence disputing her claims. "Accordingly, we will leave the protective order in force until 30 days after

11

the issuance of this court's remittitur. During that time, we expect the court to hold a hearing on whether that order should extend further into the future, but in no instance shall the court approve an extension beyond the date the order under review would expire . . . ." (*Ross*, *supra*, 139 Cal.App.4th at pp. 868-869.)

### III.    DISPOSITION

The domestic violence restraining order is reversed and the cause remanded with directions to the trial court to hold a new hearing within 30 days after issuance of this court's remittitur. The court shall give notice to the parties of any hearing. The restraining order shall remain in force until the conclusion of this new hearing or 30 days after issuance of the remittitur, should no such hearing take place. Should there be a hearing and the trial court determines proper grounds exist for continuation of a restraining order, it may issue a permanent domestic violence restraining order for the original term, that is, through June 4, 2024, or a lesser period of time. Because respondent did not appear on appeal, neither party shall recover costs. (Cal. Rules of Court, rule 8.278(a)(5).)

12

_____
Greenwood, P. J.

WE CONCUR:

_____
      Lie, J.

_____
      Wilson, J.

D.S. v. A.S.
H049337

Trial Court:                         San Benito County Superior Court
                                     Superior Court Nos.: FL-21-00057, DV-21-
                                     00032

Trial Judges:                        The Honorable Margaret Johnson,
                                     The Honorable Thomas P. Breen


Attorneys for Appellant,             Patrick T. Bell
D.S.:                                Lee-Mars & Bell, LLP

                                     Stephen W. Penn
                                     Law Office Of Stephen W. Penn &
                                     Associates


Pro Per Respondent,                  A.S.
A.S.:

D.S. v. A.S.
H049337