[No. A128168. First Dist., Div. Three. Sept. 30, 2011.]

RENTAL HOUSING OWNERS ASSOCIATION OF SOUTHERN
ALAMEDA COUNTY, INC., Plaintiff and Respondent, v.
CITY OF HAYWARD, Defendant and Appellant.

82

## COUNSEL

Michael Lawson, City Attorney, Rafael Alvarado, Deputy City Attorney; Jarvis, Fay, Doporto & Gibson, Andrea J. Saltzman, Benjamin P. Fay and Rick W. Jarvis for Defendant and Appellant.

James P. McBride and Verne A. Perry for Plaintiff and Respondent.

Heidi Palutke for California Apartment Association as Amicus Curiae on behalf of Plaintiff and Respondent.

## OPINION

## JENKINS, J.—

### INTRODUCTION

Following entry of judgment in favor of Rental Housing Owners Association of Southern Alameda County, Inc. (RHOA), on its petition for writ of mandate, the trial court issued a peremptory writ of mandate enjoining the City of Hayward (City) from enforcing the "Mandatory Inspection Program" (MIP) incorporated in its Residential Rental Inspection Ordinance (ordinance). The trial court concluded the ordinance was unconstitutional on its face because it forced landlords to grant City inspectors access to occupied units without the consent of the tenant, in violation of Civil Code section 1954 and the Fourth Amendment of the United States Constitution. Accordingly, the trial court enjoined enforcement of Hayward Municipal Code sections 9-5.306 (Entry) and 9-5.401 (Fees/Penalty Charges), and commanded the City to repeal or cure the constitutional and statutory defects in these sections.

In response to the writ, the City amended the ordinance and filed a return to writ of mandate.[1] RHOA filed objections to City's return to writ of mandate, asserting that the amended ordinance failed to cure the constitutional defects identified by the trial court in its earlier judgment. The trial court sustained two of the five objections raised by RHOA. The court found that the amended ordinance was unconstitutional on its face because landlords continued to be responsible for obtaining tenants' consent and could incur fines or penalties when tenants refused to permit entry to officials for inspection.

[1] Hereafter, we shall refer either to the "ordinance" (meaning the original ordinance) or to the "amended ordinance" (meaning the ordinance as amended in response to the writ).

The City appeals the trial court's order sustaining RHOA's objections to its return to writ of mandate. Having considered the arguments presented, including those of amicus curiae for RHOA, California Apartment Association (CAA),[2] we vacate the trial court's order and remand with instructions that the trial court enter a new and different order consistent with this opinion.

## FACTS AND PROCEDURAL BACKGROUND

A. *The Residential Rental Inspection Ordinance*

The City initiated its comprehensive rental housing inspection program in 1982 and first implemented the ordinance at issue here in 1989.[3] The stated purpose of the ordinance is to "safeguard the stock of decent, safe, and sanitary rental housing units within the City and to protect persons entering or residing in them by providing for inspection of rental housing units and the common areas when certain indicators show that violations of the Hayward Housing and Building Codes may exist in a unit or pursuant to a systematic area-wide inspection program." (§ 9-5.102.) The ordinance is administered under the authority of the enforcement official (the city manager, or his or her designee). (§ 9-5.301.)

The ordinance authorizes two types of inspection by City officials of rental housing units, viz., (1) the MIP (§ 9-5.302), which targets all rental housing units in specified areas, and (2) a "for cause" inspection (under § 9-5.303) of a particular rental unit at the request of a tenant who reports a housing code violation at the property. Only the MIP concerns us here.

The MIP, as described in section 9-5.302 of the ordinance, is a part of the City's "effort to encourage conservation of existing rental housing units, motels, and hotels" by requiring owners of these types of structures "to bring these units to Housing and Building Code standards." (§ 9-5.302.) Section 9-5.302 also provides, "Owners and managers *shall allow for the inspection* of these units. *If an Owner or manager refuses to permit an inspection, the Enforcement Official is authorized to procure an inspection warrant.*" (§ 9-5.302, italics added.)

The ordinance also delineates the method of entry into units for inspection purposes. Section 9-5.306 provides: "Upon presentation of proper credentials,

[2] CAA filed a request to file an amicus curiae brief on December 6, 2010. We issued on order granting the application and CAA filed its brief on December 13, 2010. The City filed a response to the amicus curiae brief on January 24, 2011. We have considered these briefs in disposing of the issues before us.

[3] The ordinance is set forth in article 5 of chapter 9 of the Hayward Municipal Code. The parties included a copy of the ordinance in their joint appendix and we shall cite to it by section number.

the Enforcement Official, after having obtained the consent of the *Owner or occupant*, may enter any rental housing unit . . . at reasonable times during daylight hours to perform any inspection required by this code. [¶] . . . [T]he Enforcement official shall not enter any rental housing unit . . . without the consent of the *Owner or occupant* thereof unless an inspection warrant therefor has been issued. . . ." (§ 9-5.306, italics added.)

Finally, in regard to fees and penalty charges, the ordinance provides: "The annual fee and fees or penalty charges for any inspection or re-inspection performed pursuant to the provisions of this code shall be established from time to time by resolution of the City Council. Payment of such fees shall be made by Owner of the rental housing unit . . . upon demand by the City." (§ 9-5.401.) The City may recover fees and penalty charges from an owner by way of a special assessment levied against the property on the tax roll after the enforcement officer prepares a report, the owner is notified of a hearing on the report, and a hearing is held. (§§ 9-5.501 to 9-5.503.) At the hearing, "the City Council shall hear and pass upon the report of the Enforcement Official together with any objections or protests thereto" and may correct or revise the report or the fees charged "as it may deem just." (§ 9-5.503.)

## B. *RHOA's Petition for Writ of Mandate*

RHOA filed its petition for writ of mandate in February 2009. In its petition, RHOA states that it is pursuing the action on behalf of its 200-plus members who own and operate approximately 12,500 dwelling units in the City, representing some 60 percent of the City's rental housing stock.

RHOA challenged the language of the MIP on several grounds. First, RHOA asserted that the portion of the MIP (§ 9-5.302) that states "Owners and managers *shall allow for the inspection* of these units" is preempted by Civil Code section 1954 (section 1954). Section 1954 describes circumstances under which a landlord may enter a tenant's unit, and as relevant here, it allows a landlord entry for inspection purposes only at the request of a tenant upon termination of the lease.[4] Second, RHOA asserted that the *"shall allow"* language violates the Fourth Amendment of the United States Constitution because it requires landlords to permit entry into residential units absent tenants' consent or a warrant. Third, RHOA asserted that the fee and penalty provisions in section 9-5.501 violate owners' rights to substantive due process under the state and federal Constitutions because owners incur fees

---

[4] Civil Code section 1954 is described in pertinent part in the Discussion, *post*.

and penalties for their refusal to allow City inspections without tenant consent. RHOA requested that the court issue a writ of mandate enjoining the City's enforcement of sections 9-5.302 (MIP) and 9-5.501 (Report on Fees/Penalty Charges).

The City opposed RHOA's writ petition. The City argued that RHOA's facial challenge to the MIP fails because the express language of section 9-5.302 does not require landlords to facilitate illegal entry into a tenant's dwelling. Rather, the language of the MIP, in conjunction with section 9-5.306 (Entry), makes clear that enforcement officials must obtain the consent of the owner or occupant prior to entry. If consent is refused, the City must obtain an inspection warrant.

In reply, RHOA argued that the City's reliance upon the consent required under the "entry" provision of section 9-5.306 was misplaced. According to RHOA, "[t]he conjunction 'or' placed between the nouns 'owner' and 'occupant'" provides alternative means to obtain entry into tenant units. Therefore entry into residential units could be accomplished upon consent of the owner.

C. *Issuance of the Writ and the City's Response*

The trial court held a hearing on RHOA's writ petition and thereafter issued a statement of decision (SOD) on July 1, 2009. In its SOD, the trial court held that the ordinance was facially invalid. The court determined that sections 9-5.302 and 9-5.306 violate Civil Code section 1954 and the Fourth Amendment of the United States Constitution because they compel the landlord to provide access to residential units without tenant consent. The trial court further ruled that the penalty provision of the ordinance violates landlords' substantive due process rights because it "prescribes a monetary sanction against the landlord even in these instances where the landlord may not be an obstruction to an inspection without a warrant." The court entered judgment in favor of RHOA granting the petition for writ of mandate, enjoined the City from enforcing sections 9-5.306 and 9-5.401 of the ordinance, and issued a peremptory writ of mandate on August 4, 2009, commanding the City to "repeal or cure the Constitutional and statutory defects" identified in the ordinance.

In November 2009, the city attorney and director of development services submitted a report to the mayor and city council proposing amendments to

the ordinance. The report informed the city council of the grounds upon which the trial court issued the writ enjoining enforcement of the ordinance. The report recommended the city council adopt proposed amendments that establish "a clear process by which the owners and tenants are notified of the inspections and the manner in which entry can be made to conduct the inspections."

After consideration of the report, the city council adopted the proposed amendments. As amended, section 9-5.306 is entitled "Notice and Entry," and provides that the City shall mail notice of an inspection to owners *and* rental units at least 14 days prior to the date of inspection. It further provides: "*It shall be the responsibility of the Owner . . . to make a good faith effort to obtain the consent of the tenants to inspect the subject rental housing units or otherwise obtain legal access to the units.*" (Italics added.)

Thereafter, the City filed its final return to writ of mandate, notifying the court that the amendment to section 9-5.306 of the ordinance would become effective on December 31, 2009. The City asserted that by enacting the amendment "it has fully complied with the writ" and requested the writ be discharged.

D. *Trial Court's Ruling on the City's Return on the Writ*

RHOA filed timely objections to the return, arguing that the amendments ratified by the city council failed to correct constitutional and state law infirmities identified by the court. The City filed a response to RHOA's objections. Thereafter, the trial court held a hearing on RHOA's objections, entertained argument of counsel, and took the matter under submission. On March 26, 2010, the trial court issued an order sustaining RHOA's objections on two grounds. To facilitate our review of the issues raised by appellant on appeal, we set forth below each objection raised by RHOA to the City's return, and the trial court's rulings.

RHOA argued that the City failed to comply with the writ of mandate by failing to delete the "shall allow" language in section 9-5.302 (which states that landlords "shall allow" for inspection) as that language compels landlords to permit entry into residential units without tenant consent. The trial court overruled this objection, finding that the amended ordinance now clearly requires the consent of both owner and tenant prior to inspection.

Second, RHOA argued that the requirement of landlord presence at inspections was an arbitrary exercise of police power in violation of landlords' right to substantive due process because the requirement was not substantially related to the purpose of the MIP. The trial court overruled this objection,

stating that "requiring the landlord's presence is neither arbitrary nor unreasonable as the landlord frequently bears the burden of making repairs of habitability defects discovered by the inspectors."

RHOA's third and fourth objections relate to section 9-5.306, as amended, which requires landlords to make a good faith effort to obtain the consent of the tenant to an inspection. Specifically, RHOA argued that the good faith requirement was constitutionally vague, in violation of due process, because it imposes "an arbitrary obligation without standards" that will result in a "regime of unjust fines." The trial court rejected RHOA's contention, stating that "the concept of 'good faith' is not, on its face, a violation of the Constitutional requirement of due process." RHOA also argued that the "good faith" requirement, coupled with the requirement that a landlord be present at the inspection, creates the likelihood of an unlawful landlord inspection in violation of Civil Code section 1954 and also makes the landlord an "involuntary agent" of the City in violation of the California Constitution. The trial court sustained this objection. The court ruled that a landlord "may not be held responsible to obtain the tenant's consent to permit the governmental entry for inspection."

Finally, RHOA objected to the amended ordinance arguing that it allowed the City to arbitrarily impose sanctions on a landlord for costs associated with a tenant's refusal to consent to inspection. The trial court sustained this objection as well. The court ruled that "while it is a policy choice by the City if it chooses to not sanction a tenant for their refusal to consent to the City's inspection, it is not within the City's discretion to sanction the landlord/owner for the tenant's act."

Having sustained RHOA's fourth and fifth objections to the City's return on the writ, the court directed the City to cure the constitutional defects "and make further return on the Writ showing full compliance with the Court's writ within 90 days." The City filed a notice of appeal on April 9, 2010.

DISCUSSION

The City contends that the trial court erroneously sustained RHOA's objections to the City's return and that its order finding the amended ordinance facially invalid should be reversed. As discussed below, we conclude the trial court erred when it sustained RHOA's facial challenge to the amended ordinance.

A. *Applicable Legal Standards*

"A facial challenge to the constitutional validity of a statute or ordinance considers only the text of the measure itself, not its application to

the particular circumstances of an individual. [Citation.]" (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084 [40 Cal.Rptr.2d 402, 892 P.2d 1145].) "A claimant who advances a facial challenge faces an 'uphill battle . . .' [citation]" (*Home Builders Assn. v. City of Napa* (2001) 90 Cal.App.4th 188, 194 [108 Cal.Rptr.2d 60]), and " ' "petitioners cannot prevail by suggesting that in some future hypothetical situation constitutional problems may possibly arise as to the particular *application* of the statute . . . . Rather, petitioners must demonstrate that the act's provisions inevitably pose a present total and fatal conflict with applicable constitutional prohibitions." ' [Citation.]" (*Tobe v. City of Santa Ana, supra,* 9 Cal.4th at p. 1084.)[5] "Under a facial challenge, the fact that the statute ' "might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid . . . ." ' [Citation.]" (*Sturgeon v. Bratton* (2009) 174 Cal.App.4th 1407, 1418 [95 Cal.Rptr.3d 718].) ▮ "All presumptions favor the validity of a statute. The court may not declare it invalid unless it is clearly so. [Citation.]" (*Tobe v. City of Santa Ana, supra,* 9 Cal.4th at p. 1102.) " ' "The interpretation of a statute and the determination of its constitutionality are questions of law. In such cases, appellate courts apply a de novo standard of review." [Citations.]' [Citation.]" (*Samples v. Brown* (2007) 146 Cal.App.4th 787, 799 [53 Cal.Rptr.3d 216].)

## B. *Analysis*

The City contends the trial court erred when it sustained RHOA's objection, on agency grounds, to the amended ordinance's "good faith" requirement. On appeal, RHOA more clearly articulates the basis of its agency argument. RHOA argues that by requiring landlords to exercise good faith in attempting to obtain tenant consent to City inspection, section 9-5.306 forces landlords to act as "agents" of the City.[6] RHOA asserts the agency relationship imposed upon landlords by operation of the good faith requirement is "compulsory" or "unilateral," in violation of California law on creation of agency. Therefore, RHOA concludes, the amended ordinance is preempted

---

[5] RHOA asserts that in *Alviso v. Sonoma County Sheriff's Dept.* (2010) 186 Cal.App.4th 198 [111 Cal.Rptr.3d 775] (*Alviso*), we endorsed a more "lenient formulation" of the "total and fatal conflict" standard for facial challenges described by our Supreme Court in *Tobe v. City of Santa Ana, supra,* 9 Cal.4th 1069. Not so. We merely observed that in some cases the court had applied a formulation requiring a petitioner to demonstrate that a statutory scheme is unconstitutional only in "the 'vast majority of its applications.' " (*Alviso, supra,* 186 Cal.App.4th at p. 205.) While we stand by our observation that, as between the two, "the 'vast majority of its applications' " is a more lenient standard than a "total and fatal conflict," our analysis here would be no different under either standard.

[6] Civil Code section 2355 and the Restatement Third of Agency (2006), section 1.01 require mutual agreement and assent in the creation of an agency relationship.

under article XI, section 7 of the California Constitution.[7] RHOA's argument, however, is a mere tautology founded upon a concept alien to California law—"compulsory" or "unilateral" agency.

■ California law recognizes a relationship known as agency where one party, the agent, "represents another, called the principal, in dealings with third persons." (Civ. Code, § 2295; see 3 Witkin, Summary of Cal. Law (10th ed. 2005) Agency and Employment, § 1, p. 40.) An agency relationship is a *bilateral* matter created through *mutual* consent. (See *van't Rood v. County of Santa Clara* (2003) 113 Cal.App.4th 549, 571 [6 Cal.Rptr.3d 746] [" ' "Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." [Citation.]' "].) Absent mutual consent, therefore, there can be no agency.

Here, the amended ordinance requires that landlords make good faith efforts to obtain tenant consent to City inspections. However, the "good faith requirement" is not a bilateral agreement between City and landlords, a necessary prerequisite for creation of an agency relationship. Simply put, RHOA's argument rests upon a legally unsupported premise that the imposition of a good faith requirement creates an agency relationship. In sum, we see no conflict, express or implied, between the amended ordinance's good faith requirement and the general law of agency. Accordingly, the amended ordinance is not preempted under article XI, section 7 of the California Constitution. (See *Sherwin-Williams Co. v. City of Los Angeles, supra*, 4 Cal.4th at p. 897.)

RHOA further asserts that the trial court's ruling sustaining its objection to the good faith requirement violates the Fourth Amendment and section 1954. We address each argument in turn below.

■ RHOA contends that the good faith requirement violates the Fourth Amendment because "tenants' Fourth Amendment rights are put in jeopardy if owners are tasked with obtaining knowing and voluntary waivers from tenants." First, we note that RHOA lacks standing to assert such a Fourth Amendment claim on behalf of tenants because RHOA has no privacy interest in units occupied by tenants. (See, e.g., *U.S. v. Taketa* (9th Cir. 1991)

---

[7] Article XI, section 7 of the California Constitution, provides: "A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." (Cal. Const., art. XI, § 7.) A charter city ordinance like the one here conflicts with state law, and is thereby preempted, only if the ordinance " ' " 'duplicates, contradicts, or enters an area fully occupied by general law, either expressly or by legislative implication.' " ' [Citations.]" (*Sherwin-Williams Co. v. City of Los Angeles* (1993) 4 Cal.4th 893, 897 [16 Cal.Rptr.2d 215, 844 P.2d 534].)

923 F.2d 665, 669–670 [a party lacks 4th Amend. standing if *that party's* reasonable expectation of privacy has not been infringed].) Even if RHOA had standing to assert this Fourth Amendment claim, we would reject it.

■ The Fourth Amendment protects citizens against " 'unreasonable searches and seizures' " of their homes and persons. (*Camara v. Municipal Court* (1967) 387 U.S. 523, 528 [18 L.Ed.2d 930, 87 S.Ct. 1727].) A governing principle of Fourth Amendment jurisprudence is that "a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant." (*Camara*, at pp. 528–529; see *id.* at p. 534 [holding that "administrative searches" of the sort contemplated under the amended ordinance violates the 4th Amend. unless conducted with proper consent or accompanied by a warrant].) A corollary principle is that "because the ultimate touchstone of the Fourth Amendment is 'reasonableness,' the warrant requirement is subject to certain exceptions. [Citations.]" (*Brigham City v. Stuart* (2006) 547 U.S. 398, 403 [164 L.Ed.2d 650, 126 S.Ct. 1943].) Here, nothing in the language of the amended ordinance offends either the warrant requirement or the Fourth Amendment's requirement of reasonableness. The amended ordinance requires tenant consent before a City inspection can proceed. Absent tenant consent, the City must obtain an inspection warrant. We fail to see how the amended ordinance's good faith requirement violates the Fourth Amendment's prescription of reasonableness.

We also reject RHOA's contention that the amended ordinance is preempted by Civil Code section 1954. Section 1954 provides in pertinent part: "(a) A landlord may enter the dwelling unit only in the following cases: [¶] (1) In case of emergency. [¶] (2) To make necessary or agreed repairs, decorations, alterations or improvements, supply necessary or agreed services, or exhibit the dwelling unit to prospective or actual purchasers, mortgagees, tenants, workers, or contractors or to make an inspection pursuant to subdivision (f) of Section 1950.5.[8] [¶] (3) When the tenant has abandoned or surrendered the premises. [¶] (4) Pursuant to court order." (§ 1954, subd. (a).)

■ Patently, Civil Code section 1954 addresses the circumstances under which landlords are authorized "to enter an occupied residential dwelling." (*Spinks v. Equity Residential Briarwood Apartments* (2009) 171 Cal.App.4th 1004, 1049 [90 Cal.Rptr.3d 453] [noting civil penalties may be imposed "for 'a significant and intentional violation' " of § 1954 "if done 'for the purpose of influencing a tenant to vacate a dwelling' "].) In contrast to section 1954,

---

[8] Civil Code section 1950.5, subdivision (f) provides that a tenant may request a joint inspection of the property (landlord and tenant) "to remedy identified deficiencies, in a manner consistent with the rights and obligations of the parties under the rental agreement, in order to avoid deductions" from his or her security deposit. (§ 1950.5, subd. (f)(1).)

the amended ordinance authorizes City *officials* to enter a tenant's residence to conduct inspections. Thus, we see no conflict between the amended ordinance, which governs inspections conducted by City officials, and section 1954, which limits the circumstances under which *landlords* can enter tenant residences.[9]

█ In sum, we conclude the trial court erred when it concluded that the good faith requirement of the amended ordinance was facially invalid under the law of agency. In addition, RHOA cannot demonstrate that the good faith requirement is facially invalid under the Fourth Amendment or section 1954.

█ Last, we consider whether the trial court properly sustained RHOA's objection to the amended ordinance's fee provisions on substantive due process grounds. The concept of "due process of law" guarantees both procedural and substantive rights.[10] (*Gray v. Whitmore* (1971) 17 Cal.App.3d 1, 21 [94 Cal.Rptr. 904].) Substantive due process protects against "arbitrary legislative action, even though the person whom it is sought to deprive of his right to life, liberty or property is afforded the fairest of procedural safeguards." (*Ibid.*) To satisfy substantive due process concerns, "the law must not be unreasonable, arbitrary or capricious but must have a real and substantial relation to the object sought to be attained. [Citations.]" (*Ibid.*)

The trial court held the amended ordinance facially invalid on substantive due process grounds because the penalty/fee provisions arbitrarily and unreasonably allow the City to sanction a landlord for reinspection costs unconnected to the landlord's conduct (i.e., costs occasioned by a tenant's refusal to permit an inspection). Likewise, RHOA argues here that "substantive due

---

[9] RHOA also argues that section 9-5.306 of the amended ordinance conflicts with Civil Code section 1954 because it requires landlord presence at inspections. This requirement does not render the amended ordinance facially invalid under section 1954. While it is conceivable a tenant might consent to an inspection by City officials yet deny the landlord permission to enter at the inspection, the amended ordinance does not address such a scenario. On a facial challenge, we must presume the validity of the ordinance. (See *Tobe v. City of Santa Ana, supra*, 9 Cal.4th at p. 1102 [stating that "[a]ll presumptions favor the validity of a statute" and a court "may not declare it invalid unless it is clearly so"].) Thus, if such a scenario arose, we presume City officials would not, on the basis of the tenant's consent to inspection by City officials, insist that they be accompanied by the landlord if the tenant objects to the landlord's presence. (See *Arcadia Unified School Dist. v. State Dept. of Education* (1992) 2 Cal.4th 251, 266 [5 Cal.Rptr.2d 545, 825 P.2d 438] ["We have no reason to believe, in this facial challenge, that the statute will be applied improperly."].)

[10] Patently, the notice and hearing provisions set forth in sections 9-5.502 and 9-5.503 of the amended ordinance provide owners adequate *procedural* due process rights to contest any fee or penalty imposed pursuant to the residential rental inspection program.

process is implicated for lack of a conditional nexus" between a recalcitrant tenant's noncooperation and a consequential monetary sanction against the owner.[11]

However, even assuming an inspection ordinance that affirmatively allowed sanctions against a landlord arising from tenant noncompliance would raise substantive due process concerns,[12] the amended ordinance we vet here raises no such concerns. To the contrary, as demonstrated below, the amended ordinance does not provide for a monetary sanction against an owner for a recalcitrant tenant's noncooperation in every case, or even in the vast majority of cases, therefore a facial challenge cannot be sustained on the substantive due process grounds asserted here. (Cf. *Tobe v. City of Santa Ana, supra,* 9 Cal.4th at p. 1084; *Alviso, supra,* 186 Cal.App.4th at p. 205.)

 The amended ordinance authorizes the imposition of fees or penalties under sections 9-5.401 and 9-5.306. Section 9-5.401 (Fees/Penalty Charges) states, "[A]nnual fee and fees or penalty charges for any inspection or re-inspection performed pursuant to the provisions of this code shall be established from time to time by resolution of the City Council. *Payment of such fees shall be made by Owner of the rental housing unit or hotel or motel upon demand by the City.*" (§ 9-5.401, italics added.) True, section 9-5.401 provides that only owners, not tenants, are responsible for payment of penalty charges. However, it does not describe *any* of the circumstances under which owners may *incur* such penalties, and certainly does not call for imposition of a penalty on the owner when a tenant fails to cooperate.

 Section 9-5.306 (Notice and Entry), on the other hand, *does* describe the specific circumstances under which owners *may incur* penalties in connection with notice and entry attendant to City inspections. First, section 9-5.306 provides: "The Owner or the Owner's designated representative shall be present at the rental housing property at the time of the inspection. The time of the inspection shall be at the time indicated in the notice issued

---

[11] RHOA also suggests the amended ordinance "offends due process" because it is "over-broad." The overbreadth doctrine, however, applies only to activities sheltered by the First Amendment and is limited to and not recognized outside of the First Amendment context. (See *United States v. Salerno* (1987) 481 U.S. 739, 745 [95 L.Ed. 2d 697, 107 S.Ct. 2095].) We fail to see how the overbreadth doctrine has any relevance to the claims asserted by RHOA.

[12] In its reply brief, the City for the first time raises the argument that under its police powers it is authorized to charge landlords "regulatory fees" for reinspection costs occasioned by a tenant's lack of consent to inspection. This issue is not properly before us and we decline to consider it. (*Smith v. Board of Medical Quality Assurance* (1988) 202 Cal.App.3d 316, 329, fn. 5 [248 Cal.Rptr. 704] [declining to address issue raised in reply brief because "it is unfair for an appellant to raise issues for the first time on appeal in a reply brief . . ."]; accord, *Shimmon v. Franchise Tax Bd.* (2010) 189 Cal.App.4th 688, 694, fn. 3 [117 Cal.Rptr.3d 430] ["arguments raised for the first time in the reply brief will not be considered unless good cause is shown for failing to raise them earlier"].)

pursuant to this code, or the time that the inspection was properly rescheduled in accordance with the provisions of this code. *Violations of this paragraph may result in a re-scheduling fee."* (§ 9-5.306, as amended, italics added.) Second, section 9-5.306 provides: "An inspection may be rescheduled once by the Owner . . . by giving notice to the Enforcement Officer at least five (5) calendar days prior to the scheduled inspection date. An inspection may only be rescheduled to a date within fourteen (14) calendar days of the previously scheduled inspection date. *Violations of this paragraph may result in a re-scheduling fee."* (Italics added.) Significantly, section 9-5.306 *does not* authorize the imposition of a penalty on the owner for a tenant's noncooperation. Section 9-5.306 provides that a landlord *may* be sanctioned in only two circumstances in connection with notice and entry attendant to City inspections—(1) where the owner fails to appear for inspection, and (2) where the owner attempts to reschedule an inspection without requisite notice to the City. (See § 9-5.306.)

Accordingly, because sections 9-5.401 and 9-5.306 do not sanction the imposition of penalties on owners for any tenant noncompliance, the amended ordinance does not violate principles of substantive due process and therefore cannot be declared facially invalid on that basis under either the "total and fatal conflict" standard (*Tobe v. City of Santa Ana, supra,* 9 Cal.4th at p. 1102), or the "vast majority of its applications" standard (*Alviso, supra,* 186 Cal.App.4th at p. 205).[13]

To conclude, having considered the opposing contentions of the parties, and upon de novo review of the language of the amended ordinance, we conclude the trial court erred in sustaining RHOA's objections to the City's return on the writ. Accordingly, we vacate the trial court's order.

---

[13] Amicus curiae CAA contends the requirement that the owner make a good faith effort to gain the tenant's consent for City inspectors to enter an occupied unit violates constitutional guarantees of procedural and substantive due process. RHOA did not cross-appeal and does not challenge here the trial court's ruling that "the concept of 'good faith' is not, on its face, a violation of the Constitutional requirement of due process." Generally, "an amicus curiae accepts a case as he or she finds it . . . [¶] . . . [¶] . . . ' "and . . . additional questions presented . . . by an amicus curiae will not be considered." ' " (*California Assn. for Safety Education v. Brown* (1994) 30 Cal.App.4th 1264, 1274–1275 [36 Cal.Rptr.2d 404], citation omitted.) In all events, CAA's procedural due process contention is premised on the "risk of unfair deprivation of . . . property interests." Among these alleged deprivations are "penalty and lien provisions of the Ordinance and . . . potential damages . . . associated with defending against a tenant's lawsuit." Similarly, its substantive due process argument is founded on the specter of "harsh and oppressive" penalties on owners for tenant noncompliance. However, as discussed above, the amended ordinance does not, on its face, violate section 1954 or the Fourth Amendment, and does not impose fees on a landlord for tenant noncompliance. Accordingly, we reject CAA's due process contentions.

## DISPOSITION

The trial court's order sustaining RHOA's objections to the City's return on the writ is vacated and the matter is remanded for the trial court to enter a new and different order consistent with this opinion. Costs are awarded to City.

McGuiness, P. J., and Pollak, J., concurred.