Filed 4/3/23  Homes and Hope Los Angeles v. City of Los Angeles CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| HOMES AND HOPE LOS ANGELES, LLC, et al.,<br><br>Plaintiffs and Respondents,<br><br>v.<br><br>CITY OF LOS ANGELES,<br><br>Defendant and Appellant. | B308874<br><br>(Los Angeles County Super. Ct. No. 20STCV07585) |

APPEAL from an order of the Superior Court of Los Angeles County, Randolph M. Hammock, Judge.  Affirmed.

Michael N. Feuer, City Attorney, Kathleen A. Kenealy, Deputy City Attorney, Scott Marcus, Chief Assistant City Attorney, Blithe S. Bock, Assistant City Attorney and Sara Ugaz, Deputy City Attorney for Defendant and Appellant.

Michael N. Sofris for Plaintiffs and Respondents.

_____

Defendant and appellant City of Los Angeles appeals from the denial of its anti-SLAPP motion (Code Civ. Proc., § 425.16). Plaintiffs are landlords who rent units in multiple properties in the City. They brought this declaratory relief action to challenge the provisions of the City's Housing Code which provide for regular inspections of rental units. Plaintiffs allege the Systematic Code Enforcement Program (SCEP) is (1) facially unconstitutional and (2) unconstitutional as applied to them, in that their properties have been subjected to invasive inspections in retaliation for their prior litigation activities against the Housing Department.[1]

The City takes the position that plaintiffs' as-applied challenge arises from the City's protected petitioning activity – specifically, its enforcement of SCEP – and that plaintiffs have failed to establish a probability of prevailing on their action. The trial court agreed that the as-applied challenge arose from the City's protected conduct, but concluded plaintiffs had established a probability of prevailing, and denied the anti-SLAPP motion. On the City's appeal, we agree that, as the term is used in the

---

[1] There is no specific chapter or division of the Housing Code which uses the Systematic Code Enforcement Program name. However, the owners of all buildings subject to inspection are subject to an annual fee to fund the program, and the fee "shall be known as the 'Systematic Code Enforcement Program Fee'." (L.A. Mun. Code, § 161.352, subd. A.)

The "Housing Department" was previously named the Housing and Community Investment Department. It was renamed effective August 8, 2021. (L.A. Ord. No. 187,122.) We use the current name.

anti-SLAPP law, the plaintiffs established a probability of prevailing, and therefore affirm.[2]

### FACTUAL AND PROCEDURAL BACKGROUND

1.    *Preliminary Observations*

Plaintiffs David and Barbara Darwish are married; plaintiff Eden Darwish is their son. Together, they own or control more than 20 properties in the City. There are a number of properties at issue; the Darwishes allege they own the properties either directly, through trusts, or through companies or corporations (which also hold ownership either directly or through trusts). The Darwishes allege that the companies through which they own the properties have assigned their rights against the City to plaintiff Homes and Hope, a limited liability company. The precise owners of each property and the validity of any purported assignments are not at issue in this appeal. Unless the context otherwise requires, we refer to the plaintiffs collectively as the Darwishes.

Neither the complaint, the declarations in support of or in opposition to the anti-SLAPP motion, nor the briefs, make any effort to provide a chronological tale of the City's SCEP enforcement efforts against the Darwishes. In order to put the Darwishes' claims of retaliatory enforcement in context, we attempt to do so by relying on the (admitted) exhibits in support of and in opposition to the anti-SLAPP motion, as well as those

---

[2]    The trial court also denied the City's anti-SLAPP motion as directed to plaintiffs' facial challenge to SCEP, on the basis that it did not arise from the City's protected activity. On appeal, the City concedes that this ruling was correct. We therefore are concerned solely with plaintiffs' claim that SCEP is unconstitutional as applied.

3

portions of the declarations to which objections were not sustained.

## 2. *The Prior Contentious Relationship Among the Parties*

Before we discuss the prior interactions between the parties, we observe that, although this lawsuit is about the enforcement of SCEP, another ordinance – the City's Rent Stabilization Ordinance – lurks in the background. Of immediate importance to the following discussion is that the Rent Stabilization Ordinance requires landlords to annually register all of their units subject to that ordinance. (L.A. Mun. Code, § 151.05, subd. J.1.) In the underlying dispute, the Darwishes take the position that SCEP is limited only to units subject to the Rent Stabilization Ordinance. The City disagrees. We need not resolve the issue in this appeal. What matters is that the Darwishes have alleged this connection between the two ordinances, such that a property's exemption from the Rent Stabilization Ordinance also constitutes an exemption from SCEP.

### A. *Almont Civil and Criminal Actions*

The Darwishes own a rental property known as the "Almont Property." According to their complaint, in 2009, the Housing Department "refused to renew the registration of four rental units at the Almont property." The Housing Department took the position that the property was limited to only two rental units.[3] Barbara Darwish "commenced an action and a writ

---

[3] The record is not clear on this point, but we infer from later rulings in the *Almont* action that the City belatedly discovered that a certificate of occupancy had been issued for only two, rather than four, units on the property.

4

proceeding" against the Housing Department to compel it to renew the registration of all four units, which action and writ proceeding were consolidated into a single action.[4] (*Darwish v. City of Los Angeles* (Super. Ct. L.A. County, No. BC398784).) Ultimately, each party was partially successful. Judgment was entered on October 6, 2011. The trial court held that Barbara Darwish was entitled to a writ of mandate as the Housing Department "has a ministerial duty under its Rent Stabilization Ordinance, to register or renew registration of [the] four rental units on [her] property, upon payment by [Barbara Darwish] of the fees required to register four units . . . ." The court further explained that the City "does not authorize its Housing Department to use the ministerial provisions of the Rent Stabilization Ordinance to force a landlord to comply with the City's building code." However, the court also entered judgment in favor of the City on Barbara Darwish's cause of action "for Estoppel." The court concluded that the City could not be estopped from requiring a valid certificate of occupancy for the building, even though it had been used for decades as four units.

On January 28, 2010, while the *Almont* civil action was ongoing, the City filed a misdemeanor complaint against David and Barbara Darwish alleging criminal responsibility for building code violations at the Almont property – including unlawfully

---

[4] According to the Darwishes' request for judicial notice in opposition to the anti-SLAPP motion, exhibit 8 to its request is the petition for writ of mandate in that action, and exhibit 9 is the order overruling the City's demurrer in that action. But exhibit 8 is instead a first amended complaint in an action relating to a completely different property and there is nothing behind the tab for exhibit 9. The parties do not discuss this gap in the record.

5

using the property without a certificate of occupancy.[5] (*People v. Darwish* (Super. Ct. L.A. County, 2010, No. 0HY05011)  On February 10, 2012 – three months after the civil case was resolved – the City dismissed the criminal complaint.

B.    *Crestmont/Effie Action*

The Darwishes own a property with the two addresses 3512 W. Crestmont Avenue and 3511 Effie Street.  Both homes are on a parcel with a single lot number.  According to the Darwishes, there was a "lot cut" line on the map, separating the parcel into two smaller lots, each with a single-family dwelling.[6]  On October 18, 2018, Eden Darwish (the son) brought suit against the City, for inverse condemnation and declaratory relief, alleging that the city arbitrarily, capriciously, and negligently erased the lot cut line between the two properties.  (*Darwish v. City of Los Angeles Bureau of Engineering* (Super. Ct. L.A. County, 2018, No. 18STCV02108).)  In that case, plaintiff Eden Darwish alleged the following:  the Housing Department attempted to inspect the properties under SCEP in 2010 and 2014, but the Darwishes refused consent, on the basis that the

---

[5]    The criminal complaint was filed on January 28, 2010.  The City's declarant executed the complaint on December 8, 2009, a few days after the City's demurrer was overruled in the civil case on December 4.

[6]    The distinction is significant because single family dwellings are exempt from the City's Rent Stabilization Ordinance, but not if multiple single-family dwellings are located on the same parcel.  (L.A. Mun. Code, § 151.02 [definition of "Rental Units"].)  And as previously discussed, the Darwishes' position is that exemption from the Rent Stabilization Ordinance also constitutes exemption from SCEP.

6

homes were two separate single-family residences. The City illegally inspected the property in 2014, finding a number of Housing Code violations. On the Darwishes' administrative appeal, the violations were upheld. Thereafter, the Housing Department communicated with the Bureau of Engineering and, at the direction of the Housing Department, the Bureau of Engineering erased the lot cut line between the properties, "for the purpose and with the effect of establishing [Housing Department] jurisdiction over the Crestmont/Effie Property and to impose the requirements of [the Rent Stabilization Ordinance on the property] without notice to Eden and an opportunity to be heard, . . ." Our record does not disclose the status of this lawsuit.

3.    *Alleged Retaliatory Enforcement of SCEP*

The Darwishes allege that, as a result of their successful prosecution of the *Almont* writ of mandate, and their continued litigation against the City in *Crestmont/Effie* matter (among other legal challenges), they have become a target for retaliation by the Housing Department. They allege the Housing Department exercises its discretionary authority under SCEP to conduct repeated inspections of their properties, and cite them for "picayune and super-technical nit-picking" violations, in order to justify sanctions against them.[7]

---

[7]    In their complaint, the Darwishes alleged that the *Almont* criminal matter was also retaliatory. In their respondent's brief, they suggest this allegation was simply an "incidental allegation," not a basis of their claim. It may be that the *Almont* criminal matter was pleaded as an illustration of the City's alleged intent to illegally retaliate against the Darwishes.

Before we discuss the specific allegations, a brief overview of SCEP is helpful.

*A.    SCEP*

SCEP is best understood in the context of the U.S. Supreme Court decision in *Camara v. Municipal Court of San Francisco* (1967) 387 U.S. 523.  In that case, the Supreme Court upheld administrative searches of real property based on "reasonable legislative or administrative standards for conducting an area inspection."  (*Id.* at p. 538.)  "Such standards, which will vary with the municipal program being enforced, may be based upon the passage of time, the nature of the building (e.g., a multi-family apartment house), or the condition of the entire area, but they will not necessarily depend upon specific knowledge of the condition of the particular dwelling."[8]  (*Ibid.*)

The administrative standards set forth in SCEP are based on time alone.  SCEP provides that the Department "shall make a reasonable effort to conduct a periodic inspection once every four years of all residential rental properties, buildings, units and structures falling within the scope of this Article."  (L.A. Mun. Code, § 161.602, subd. A.)

A routine inspection is commenced by service on both the landlord and tenant of a notice of inspection, at least 30 days in advance of the inspection date.  (L.A. Mun. Code, § 161.601, subd. B.)  The landlord and the tenant may object to the inspection notice by seeking pre-compliance judicial review.  (L.A. Mun. Code, § 161.601, subd. C.)  Alternatively, if consent is denied, the Housing Department may obtain an inspection

---

[8]    Plaintiffs' facial challenge to SCEP, which is not at issue in this appeal, raises the question of whether SCEP's standards for housing inspections are sufficiently reasonable to satisfy *Camara.*

warrant. (L.A. Mun. Code, § 161.601, subd. D.1.) Code of Civil Procedure section 1822.51 provides that an inspection warrant shall be issued upon cause. Cause shall be deemed to exist if "reasonable . . . administrative standards for conducting a routine or area inspection are satisfied with respect to the particular place, dwelling structure [or] premises . . . ." (Code Civ. Proc., § 1822.52.) Once the warrant issues, notice must be served. (L.A. Mun. Code, § 161.601, subd. D.2.) The landlord or tenant may seek judicial review of the inspection warrant. (L.A. Mun. Code, § 161.601, subd. D.4.)

If the inspection reveals a Housing Code violation, the Housing Department shall issue a "notice and order." (L.A. Mun. Code, § 161.409.) This is in a standard form and it orders correction of the violations. "The order shall inform the owner that failure to correct the violation may result in additional inspection fees . . . or rent withholding . . . and/or rent reduction [pursuant to other regulations]." (L.A. Mun. Code, § 161.702.) Except as otherwise provided, the order shall give the owner no more than 30 days to correct the violation. (L.A. Mun. Code, § 161.801.) If the violation has not been corrected by the time specified, the Housing Department General Manager shall hold a hearing, which is preceded by notice of potential penalties, up to and including civil penalties and proposed referrals for criminal prosecution. (L.A. Mun. Code, §§ 161.801, 161.802.) The hearing results in a General Manager's written decision, which can order a rent reduction, a referral for prosecution or any number of other sanctions.[9] (L.A. Mun. Code, § 161.805.) The General

---

[9] The Darwishes state they are particularly concerned that the General Manager may "[o]rder the building or dwelling units be accepted into REAP." (L.A. Mun. Code, § 161.805, subd. (3).)

Manager's decision may be administratively appealed.  (L.A. Mun. Code, § 161.1002.)

    *B.*    *The Rendall Place Inspection*

Plaintiffs own the Rendall Place property; it is located at 1516 N. Rendall Place and has an alternate address of 1517-1519 N. Silver Lake Boulevard.  There are four units at the property.

On January 9, 2020, the Housing Department sought a warrant to inspect all four units at the Rendall property.  The Housing Department represented that the property was last inspected in 2014, so was "past due for a regulatory inspection," and also represented it had received a number of code enforcement complaints concerning the property.  The Department further claimed it had noticed an inspection for earlier in the year, but the Darwishes declined.  The Department's statement of cause explained that it had received an exemption request from the Darwishes for three of the four units on the property, on the basis that the units were used for storage and were not rented out.  The Department stated, "It is the Department policy to accept the statement of the owners made under penalty of perjury.  Acceptance of the three exemptions, leaves one unit subject to SCEP.  However, [the Department] has received emails from a neighboring property that claims this property is being rented short-term, which

---

REAP is the Rent Escrow Account Program.  (L.A. Mun. Code, §§ 162.00, et. seq.)  Upon placement into REAP, there is a rent reduction on the property, and the establishment of an escrow account into which the (reduced) rent is paid.  (L.A. Mun. Code, §§ 162.04, 162.07.)  Funds may be released from the escrow account for a number of reasons, including correcting the deficiencies or paying a tenant's relocation expenses.  (L.A. Mun. Code, § 162.07, subd. B.2.)

suggests the invalidity of the exemptions filed by the owner [citation] and must be investigated."

On January 15, 2020, the court issued an inspection warrant as requested.

On January 21, 2020, the Darwishes applied for judicial review of the inspection warrant on the basis of the exemption it had obtained for three of the four units on the property.

On February 7, 2020, the court issued a revised warrant, permitting inspection only of the single unit of the Rendall property for which an exemption had not been obtained, unit 1517. According to David Darwish's declaration filed in opposition to the anti-SLAPP motion, that unit "was a vacant lot of approximately 500 square feet."[10] The Darwishes had sought an exemption for that unit as well, but it was denied because the exemption had not been registered prior to the date of the warrant request.

The inspection was conducted on February 13, 2020. According to Darwish, the Housing Department sent "six inspectors to review substandard conditions on the vacant lot at Rendall. Those inspectors stated that the Assistant City Attorney (Deborah Breitbart) 'hates Barbara Darwish.' " The City agrees that the inspection was contentious; the housing inspector's return to the inspection warrant notes that, "Throughout the SCEP inspection we were constantly being filmed and criticized by the Darwish family."

---

[10] David Darwish filed the sole declaration in opposition to the anti-SLAPP motion. References to "Darwish" alone refer to David Darwish. Darwish's use of the phrase "vacant lot" here appears to be mistaken; it is undisputed that unit 1517 actually existed; Darwish claimed that the unit was vacant.

11

On February 19 and, 2020, the Housing Department issued its notices and orders to comply.[11]  The order included three pages of violations – including, but not limited to:  unpermitted construction of a bathroom and kitchen remodel; a "[s]crewed shut electrical panel"; a "tripping hazard" caused by a damaged concrete walkway; and the failure to maintain garage doors "in good repair and in proper open/shut/lock operation."

According to Darwish's declaration, "Rendall is an unoccupied property for which construction permits are issued.  A habitability inspection of a property under construction is obviously inappropriate."  Darwish supported his declaration with a number of receipts and permits from the Department of Building and Safety.[12]

C.      *The Baywood Property*

The Baywood property, owned by the Darwishes, is located at 4003 E. Baywood Street.

Simultaneous to the Department's efforts to inspect the Rendall property, it was also seeking to inspect the Baywood property.  On January 9, 2020, the Housing Department sought an inspection warrant for Baywood on the basis that it had last been inspected in 2015 and was therefore "past due for a

---

[11]    Multiple notices and orders were apparently issued because there were different ownership entities.

[12]    In our record, the documents each have payment receipts stapled to the front of them, often blocking the information on the permits – including the entity to whom the permit was issued and the property involved.  The most that can be said is that the permits provide support for Darwish's claim that, before and during the inspection, the unit at 1517 N. Silver Lake was undergoing construction for which permits had been issued.

regulatory and habitability periodic inspection." As with Rendall, the City explained that it had noticed an inspection, and consent had been refused. On January 15, 2020, the court issued an inspection warrant. The Darwishes' challenge to the warrant was unsuccessful, and the warrant was reissued on February 7, 2020. The property was inspected on February 13, 2020. As with Rendall, according to the Housing Inspector's return to the warrant, "The inspection was conducted under constant criticism, from the Darwish family that were very hostile from start to end."

On February 19, 2020, the Housing Department issued its notice and order to comply regarding Baywood. The notice identified five pages of violations that needed remediation, including, among other things: an unpermitted laundry room and tub/shower conversion; the absence of a carbon monoxide detector in a bedroom with a direct vent heater; defective or damaged tiles on the kitchen counter; defective flooring; defective insect screens; peeling exterior paint; and zoning violations.

4. *The Complaint in the Present Action*

On February 24, 2020, a few days after issuance of the notices and orders to comply for Rendall and Baywood, respondents filed the present complaint, seeking declaratory and injunctive relief, challenging the constitutionality of SCEP. Their single cause of action raised both facial and as-applied challenges; as we have observed, only the as-applied challenge is at issue in this appeal. Plaintiffs allege that the Housing Department uses SCEP as "no more than a Constitutional 'fig leaf' to authorize impermissible random searches for civil and criminal violations of [the Rent Stabilization Ordinance] and to confiscate the rental income of property owners in the City

13

pursuant to REAP." They continue, "The violations against Plaintiffs arising as a result of random inspections pursuant to [SCEP] do not concern 'dangerous conditions' which can cause injury or loss of life or area-wide deterioration of residential property standards . . . . Rather, the cited violations are picayune and super-technical nit-picking assessed against multi-million-dollar residences in thriving neighborhoods, designed by Defendants to justify confiscation of rental income pursuant to REAP and bogus 'criminal' charges pursuant to the Housing Code . . . ." Specifically, plaintiffs allege they have been cited "for such minor and immaterial violations as (a) a permanently locked door, (b) partially torn closet light string, (c) loose kitchen cabinet hinges, and (d) micron-sized gaps in wood flooring and door frames."

The Darwishes allege the City "has subjected the Darwish Family and their [p]roperties to a pattern and practice of selective and vindictive enforcement of the Housing Code in retaliation for the Darwish Family's exercise of their rights as property owners and their rights of access to the court[s] of the State of California." They allege the City's selective and vindictive notices of enforcement, "citations of bogus and immaterial violations of the Housing Code," improper assertion of Rent Stabilization jurisdiction over the properties and threats to impose REAP on the properties violate the Darwishes' rights to "due process of law as guaranteed to them by the Fourteenth Amendment" of the U.S. Constitution, and the due process provision of the California Constitution.

The complaint points out that the inspection notices and orders to comply were filed within weeks of the expected trial date in the Crestmont/Effie action that Eden Darwish had filed.

14

They specifically allege that the City's retaliatory motive is evidenced by the inspection of the Rendall property, which was under construction at the time.

Plaintiffs' complaint seeks declaratory and injunctive relief.

**5.**    ***The City's Anti-SLAPP Motion***

On May 4, 2020, the City filed its anti-SLAPP motion. "An anti-SLAPP motion presents a means by which a defendant, sued for conduct in furtherance of the constitutional right of petition or free speech, can place the burden on a plaintiff to establish that there is a probability of prevailing on the claim or face early dismissal of the action. (Code Civ. Proc., § 425.16, subd. (b)(1).) If the defendant first establishes a prima facie showing that a claim is based on so-called 'protected activity,' the burden switches to the plaintiff to establish the lawsuit has at least minimal merit." (*Ratcliff v. The Roman Catholic Archbishop of Los Angeles* (2022) 79 Cal.App.5th 982, 997.)

As we ultimately conclude it is unnecessary to determine whether the City met its obligation to show the action arose from its protected activity, we do not discuss the subject at any length. Suffice it to say, the City argued the complaint, in its entirety, arose from the City's administrative enforcement actions and petitioning activity in the courts.

As to whether the plaintiffs could establish a probability of prevailing under the statute's second prong, the City incorporated the legal arguments of its simultaneously-filed demurrer, arguing that the plaintiffs' declaratory relief cause of action was fatally flawed on a legal basis. The City's factual argument against the plaintiffs' as-applied challenge to SCEP was minimal, arguing that "the Complaint fails to include any allegations of retaliatory motive or bias against Plaintiffs." The

15

City also supported its motion with the declaration of Javier Melendez of the Housing Department, who explained that properties are scheduled for SCEP inspection "based on their geography and the number of years since their last inspection," not the identity of the property owner.

**6.** ***Plaintiffs' Opposition***

Plaintiffs' opposition challenged the City's contention that the complaint arose from the City's protected activity. As to the plaintiffs' probability of prevailing, the plaintiffs submitted the Darwish declaration to demonstrate retaliatory motive. Darwish set forth the history of the Crestmont/Effie action and the Almont civil action and criminal prosecution.[13] He also stated that the Housing Department has regularly harassed him and his wife "during the course of numerous unnecessary inspections of real

---

[13] We note that there is some uncertainty in the court's ruling on the City's objections to the Darwish declaration, likely caused – as the trial court pointed out – by the City's decision to simply itemize the paragraphs to which it objected, rather than setting forth the challenged material. Specifically, defendant's objection 28 was directed to paragraph 29 of the declaration, while objection 29 was directed to paragraph 30. Our view of the court's ruling is that the language of paragraph 29 which survived consists of Darwish's statement that the City Attorney filed the Almont criminal complaint five days after the court overruled the City's demurrer in the Almont civil action; the criminal complaint named David Darwish even though he had no management responsibility for the Almont property; and the same City Attorney who filed the criminal complaint had been counsel for the City in the Almont civil action.

16

property in which we have an interest."[14]  He declared that the warrant requests and inspections for Rendall and Baywood were filed within weeks of the expected trial date in the Crestmont/Effie action, and recounted his experience of the Rendall and Baywood inspections.  He stated that the City does not threaten to inspect or inspect other properties in the same areas of the City where the Darwishes' properties are located.[15]  He asserted that, as a result of the inspections of Rendall and Baywood, the Department cited the Darwishes for minor and immaterial violations, and also for "material non-conforming conditions which would require new sidewalks and pathways and might require a complete razing of the structures on the two [p]roperties."

---

[14]     Darwish asserted that during an August 27, 2014 inspection, an employee of the Housing Department "assaulted" Barbara Darwish.  In the City's brief on appeal, it argues that its objection to this statement should have been sustained, as "[n]owhere does David Darwish's declaration explain how he knows personally of the events he describes, meaning it's a foundationless statement."  We draw the City's attention to its own "work log" for the property in question, attached to the Melendez declaration, which confirms that at the inspection on that date, both David Darwish and his wife were present and involved in the altercation.

[15]     On appeal, the City argues that this "statement has no probative value because Mr. Darwish does not bother to establish the basis for his knowledge or whether those properties were subject to the SCEP."  But the City's objection that this statement lacked foundation was overruled.  The City does not challenge this ruling on appeal.

The City filed a reply, generally reasserting arguments it had previously made.

**7.**     *Further Briefing, Hearing, Ruling and Appeal*

At the initial hearing on the motion and demurrer, the court first expressed a tentative view that the City had not satisfied its burden that the action arose from protected activity, but suggested that perhaps the City could meet its burden as to some allegations of the complaint and not others. The court requested additional briefing on this issue. The parties filed supplemental briefing as directed; specifically, the City argued (in the alternative to its argument directed to the entire complaint) that the court should strike the allegations relating only to the plaintiffs' as-applied challenge to SCEP.

After a second hearing, the court denied the anti-SLAPP motion (and overruled the City's demurrer). The court concluded that certain identified paragraphs of the complaint, relating to plaintiffs' as-applied challenge, arose from protected activity. Turning to whether plaintiffs had established a probability of prevailing, the court concluded that they had. The court first expressly recognized that, although the existence of a case or controversy is sufficient for a declaratory relief cause of action to survive demurrer, more is required to establish a probability of prevailing to defeat an anti-SLAPP motion. Specifically, the plaintiffs must make a prima facie evidentiary showing sufficient to sustain a judgment in their favor. The court found this showing had been made. The court identified the following evidence of retaliatory enforcement: a five-day gap between the adverse ruling in the *Almont* civil action and the filing of criminal charges; vindictive enforcement in the form of citing plaintiff for minor violations; the Housing Department seeking an inspection

18

warrant on habitability grounds for an unoccupied property (Rendall); and the Housing Department decision not to similarly inspect other properties in the same areas as the Darwishes' properties.

The City filed a timely notice of appeal.

### DISCUSSION

On appeal, the City contends the trial court correctly determined that plaintiffs' as-applied claim arose from the City's protected activity, but the court erred in concluding that plaintiffs demonstrated a probability of prevailing. In opposition, plaintiffs argue that the court erred in its determination of protected activity, but was correct on the probability of prevailing. We conclude that, apart from whether the court erred in determining the as-applied challenge arose from protected activity, the plaintiffs demonstrated a probability of prevailing on that challenge. We therefore limit our analysis to that issue.

### 1.    *Standard of Review*

" 'To establish a probability of prevailing, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." [Citations.] For purposes of this inquiry, "the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant [citation]; though the court does not weigh the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim." [Citation.] In making this assessment it is "the court's responsibility . . . to accept as true the evidence

favorable to the plaintiff . . . ." [Citation.] The plaintiff need only establish that his or her claim has "minimal merit" [citation] to avoid being stricken as a SLAPP.' " (*Hawran v. Hixson* (2012) 209 Cal.App.4th 256, 273-274.) On appeal, our review is de novo. (*Id*. at p. 299.)

## 2.    *Plaintiffs Have Established a Probability of Prevailing*

" '[A]n anti-SLAPP motion may lie against a complaint for declaratory relief [citation] . . . .' [Citation.] Moreover, 'the mere existence of a controversy is insufficient to overcome an anti-SLAPP motion against a claim for declaratory relief. [¶] To defeat an anti-SLAPP motion, the plaintiff must also make a prima facie evidentiary showing to sustain a judgment in the plaintiff's favor. [Citation.] In other words, for a declaratory relief action to survive an anti-SLAPP motion, the plaintiff must introduce substantial evidence that would support a judgment of relief made in the plaintiff's favor.' " (*Mission Springs Water Dist. v. Verjil* (2013) 218 Cal.App.4th 892, 909 (*Mission Springs*).)[16]

A constitutional challenge to a statute or ordinance may be facial or as-applied. (*Sturgeon v. Bratton* (2009) 174 Cal.App.4th 1407, 1418.) A facial challenge considers only the text of the measure itself, not its application to the particular circumstances of an individual. (*Ibid*.) An as-applied challenge may seek an

---

[16]    On appeal, the City argues that the trial court used the wrong standard, determining only whether the Darwishes demonstrated a genuine dispute existed between the parties, and not whether the Darwishes were likely to prevail. This is simply incorrect; the trial court cited the *Mission Springs* case, and applied its standard.

injunction against future application of the statute or ordinance in the allegedly impermissible manner it is shown to have been applied in the past. (*Id.* at pp. 1418-1419.) " 'It contemplates analysis of the facts of a particular case or cases to determine the circumstances in which the statute or ordinance has been applied and to consider whether in those particular circumstances the application deprived the individual to whom it was applied of a protected right.' [Citation.] 'If a plaintiff seeks to enjoin future, allegedly impermissible, types of applications of a facially valid statute or ordinance, the plaintiff must demonstrate that such application is occurring or has occurred in the past.' " (*Id.* at pp. 1418-1419.)

If a government agency takes an otherwise permissible administrative action against a plaintiff in retaliation for the plaintiff's exercise of a constitutional right – such as the right of petition – that retaliatory act is unconstitutional. (See *Soranno's Gasco v. Morgan* (9th Cir. 1989) 874 F.2d 1310, 1314 [defendants allegedly revoked plaintiff's business permits in retaliation for plaintiff's public criticism of defendant's regulations and initiation of litigation challenging those regulations].) When a plaintiff alleges retaliation for the exercise of constitutionally-protected rights, it must initially show that its protected conduct was a substantial or motivating factor in the defendant's decision. The burden then shifts to the defendant (here the City) to establish it would have reached the same decision even in the absence of the plaintiffs' protected conduct. (*Id.* at p. 1314.) The issue is not whether the defendants *could have* done the identical act in the absence of the plaintiffs' conduct, but whether they *would have.* (*Id.* at p. 1315.)

21

Here, the Darwishes have met their initial burden to show unconstitutional retaliation by the Housing Department. The Darwishes brought the Crestmont/Effie action, successfully obtained writ relief in the Almont civil action, successfully defended the Almont criminal suit (itself potentially retaliatory), challenged warrants, and otherwise exercised their right of petition against the Housing Department. They argue that, in retaliation for this protected petitioning conduct, the Housing Department has used SCEP to conduct unnecessary and inappropriate inspections of their property, citing them for de minimis violations, in order to cause them additional expenses and aggravation. They support this claim with evidence of, among other things, the Rendall inspection. Initially, the Housing Department sought to inspect all four units, even though its own policy required accepting the Darwishes' exemptions for three of them. When the Darwishes successfully challenged the warrant and had their three exemptions upheld, the Department went ahead with an inspection of the fourth unit, even though the Darwishes offered evidence that the unit was unoccupied and undergoing construction and therefore should not have been inspected at all. This unit was inspected by six inspectors (one of whom allegedly stated that the Assistant City Attorney "hated" Barbara Darwish), resulting in a notice and order requiring remediation within 30 days. The notice and order consisted of pages of alleged violations, both large and small, including claims that remodeling work was done without final permits being issued, even though construction was still in progress. Further, Darwish declared that this targeting of their property for an unnecessary inspection occurred while no other properties in the area were similarly inspected. This evidence, if believed by the

trier of fact, is sufficient to establish circumstantially retaliatory enforcement, and thus satisfies the Darwishes' burden under the anti-SLAPP statute to establish a probability of prevailing.

The City counters by arguing that its evidence – specifically, the Melendez declaration – demonstrates that the identity of the landlord has no bearing on the scheduling of inspections. As we have explained, on an anti-SLAPP motion, we do not weigh competing evidence; the motion should be granted only if the defendant's evidence defeats the plaintiffs' as a matter of law. Here, the City's evidence simply raises a factual dispute for trial.

The City also makes a number of legal arguments addressed to specific constitutional theories. For example, it argues that the Darwishes lack Fourth Amendment standing to challenge the inspection process, as it is the tenants, not the landlords, who have a reasonable expectation of privacy in the units. (*Rental Housing Owners Assn. of Southern Alameda County, Inc. v. City of Hayward* (2011) 200 Cal.App.4th 81, 91.) But the Darwishes assert that the Rendall unit inspected was, in fact, unoccupied by a tenant, so the Darwishes would have had a reasonable expectation of privacy in the unit. More importantly, these arguments are premature given our conclusion that the Darwishes have established a reasonable probability of prevailing on their claim of retaliatory enforcement, which is sufficient to defeat the anti-SLAPP motion.

### *DISPOSITION*

The order denying the anti-SLAPP motion is affirmed.  The City is to pay the Darwishes' costs on appeal.


RUBIN, P. J.

I CONCUR:


KIM, J.

Homes and Hope Los Angeles, LLC et al. v. City of Los Angeles
B308874


BAKER, J., Concurring



I do not agree that the one-sentence assertion of selective enforcement in the declaration of David Darwish suffices to show a probability that plaintiff will prevail in this litigation, even under the low "minimal merit" standard that applies (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009). I do agree, however, that we should affirm the order denying the anti-SLAPP motion because the challenged allegations in the operative complaint do not arise from protected activity. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061; see also *Baral v. Schnitt* (2016) 1 Cal.5th 376, 394.)



BAKER, J.